MYERS (UNITED STATES v.). See Cases Nos. 15,844–15,848.

MYERS (VALLEY NAT. BANK v.). See Case No. 5,549.

MYERS (WYTHE v.). See Case No. 18,119.

---

## Case No. 9,997.

### MYERS v. YORK & C. R. CO.

[2 Curt. 28.] [1]

Circuit Court, D. Maine. Sept. Term, 1854. [2]

REFERENCE—FORMAL DEFECTS—AWARD—RULE OF DAMAGES — RAILROAD CONSTRUCTION — PAY IN STOCK — STOCK RESERVED — MEASURE OF DAMAGES.

1. A reference of a pending action, under a rule of court, authorizes the referee to take into consideration only the subject-matter substantially shown by the declaration; but he may disregard all such formal defects as might be amended if the case were tried in court.

2. The award cannot be accepted if it does not enable the court, by inspecting it, to separate what was, from what was not awarded within the submission. But a general award of a specific sum, without specifying the items

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

[2] [Affirmed in 18 How. (59 U. S.) 246.]

of which it is composed is good, in point of form.

3. Reference of an action of covenant by a rule of court, makes the referee the final judge of the lawful rule of damages, and the court, on an application to accept the award, will not review his decision.

4. Under a stipulation to pay for building a railroad by monthly payments, twenty-five per cent. to be paid in stock of the corporation, "reserving one half the stock as indemnity for the fulfilment of this contract until said division of said road shall be completed," the corporation having wrongfully interrupted the work before the completion of the said division, held, that the stipulation as to the stock was executory, and the covenantee had not obtained a title thereto, and consequently should be allowed in damages the value thereof.

[Cited in McCreery v. Green, 38 Mich. 180.]

5. In an action of covenant, the plaintiff having been wrongfully prevented by the defendants from completing the work, the measure of damages is the difference between the price agreed to be paid for the work, and what it would have cost the plaintiff to complete it.

[Cited in McCreery v. Green. 38 Mich. 183; Hammond v. Beeson (Mo. Sup.) 15 S. W. 1002; Id., 112 Mo. 198, 20 S. W. 476.]

[This was an action of covenant by John G. Meyers against the New York & Cumberland Railroad Company, to recover damages alleged to have been sustained by reason of plaintiff's dismissal by the railroad company before the completion of his contract.]

F. O. J. Smith (with whom was Deblois), for plaintiff.

Clifford & Shepley, contra.

CURTIS, Circuit Justice. This action was referred under a rule of the court, entered at the April term, 1853, to John Davis, Marcus Morton, and Nathan Hale, Esquires, and after these referees had fully heard the parties, one of their number, Mr. Davis, died, and then Mr. Morton became so ill as to be unable to act. The parties thereupon agreed, that the remaining referee, Mr. Hale, should make an award, and he having done so, it was presented to the court at the last term, and its acceptance moved by the plaintiff, and opposed by the defendant,—only one judge being then present, by consent of parties, the case was continued to the present term, when the defendants filed their objections to the acceptance of the award, as follows:

"United States of America, Circuit Court of the United States for Maine District. In the action John G. Myers, Plaintiff, v. The York and Cumberland Railroad Company, Defendants. And now at the September term of said court, the defendants in the above entitled cause come into court and object to the acceptance of the award of Hon. Nathan Hale, as referee in the above action, and allege the following objections to the acceptance of the paper offered as an award of the said referee: First. That the said Hale has acted and awarded upon, and included in said award, damages for a subject-matter not referred to him. Second. That the said Hale has included in his said award damages for a claim not embraced in the plaintiff's writ or declaration, and not sued for in the above action, and not referred to his arbitration or decision. Third. That in and by his said award he has awarded to the plaintiff in said action damages for the non-delivery of the reserved stock specified in said writ and declaration, and in the contracts therein set out and copied, although the said reserved stock is not sued for, nor is any allegation made in the said writ and declaration that the same had been demanded, nor was any proof of demand of the same offered at the hearing before said referee, nor was any claim for the same referred for his arbitration or decision. Fourth. That the said Hale has awarded damages to the said plaintiff, in lieu of profits for work not performed by the plaintiff, under his said contracts, contrary to law. Fifth. That there having been no proof or claim that the defendants, in fraud of the plaintiff's rights under his said contract, had taken the contract from the plaintiff and given it to any other person at a lower rate, or taken it for the purpose of giving it to any other party, at a lower rate, the referee has awarded a sum as damages to the plaintiff, for prospective profits not earned by him, contrary to law. Sixth. That it does not appear in and by said award whether the said referee has credited or charged the plaintiff with an amount of bonds deposited in the hands of Levi Morrell, under the terms of the supplementary contract dated February 6, 1851, and set out in said writ and declaration. Seventh. That it does not appear in and by said award what disposition was made by the referee, of an amount of bonds in the hands of D. C. Emery, the treasurer of said corporation. Eighth. That it does not appear in and by said award whether the said referee charged the said plaintiff with an amount of bonds in his hands purporting to have been issued by one Nathaniel J. Herrick, describing himself as treasurer pro tempore of said corporation."

Upon these objections, by permission of the court. the testimony of Mr. Hale, the referee, was taken, and the counsel of the respective parties having been heard, and the objections to the award considered, we will now state our opinion thereon. The first three objections are statements in different forms, of the same thing. Their substance is this, that the referee exceeded his authority, by awarding to the plaintiff damages on account of certain stock of the defendant corporation, called reserved stock. This involves two inquiries: 1. Whether the referee did, in point of fact, allow such damages; and 2. Whether that subject-matter was referred to him. The first has been answered by the referee himself. He has testified "the value of the reserved stock, as estimated by me, was included in the damages I awarded." And it is insisted by the defendants, that the referee had not authority to include in his award a compensation to the plaintiff, for not

receiving this stock. The argument is, that this was not a reference of all demands, but only of this action; that nothing was referred which was not sued for; that under the declaration in the case neither the reserved stock, nor its value, nor a compensation for not receiving it is demanded; that the referee therefore exceeded his power in awarding damages on this account, and as the amount of those damages does not appear upon the award, so that they can be separated from the residue of the damages, by the court, the whole award is void.

To the correctness of many of these positions the court at once assents. This being a reference of the action, it was not competent for the referee to take into consideration any subject-matter, not substantially shown by the declaration. We say substantially, because formal defects in a declaration may be, and should be overlooked by a referee of an action under a rule of court. He has not the power possessed by the court, to allow them to be amended, but he may disregard them. Coffin v. Cottle, 4 Pick. 454; Forseth v. Shaw, 10 Mass. 253. Still the declaration must in substance, embrace a subject-matter, to enable a referee of that action, under a rule of court, to include that subject-matter in his award. We are of opinion also, that under our practice, the award itself must be such, as to enable the court to distinguish what is, from what is not, legally awarded. The practice here, is derived from ancient usage in the state of Massachusetts, is to render a judgment on the award. The record must contain the basis of such a judgment. The award goes upon the record. But if the court were to hear parol testimony as to the amount of damages actually awarded, and act thereon, and render judgment therefor, the judgment would accord with that parol evidence, which would not be on the record, and would not pursue the award, which would be on the record. We think the correct practice, in such a case, would require us not to accept the award. Whether it should be recommitted or not, must depend on circumstances, not necessary in this connection to be described.

The important question here is, whether this subject-matter of the reserved stock was substantially embraced in the declaration; and to decide this question we must consider the contracts set out in the declaration, and the averments there made, and the breaches there assigned. The declaration, which is in covenant broken, sets out in haec verba, two principal contracts under seal. The first bears date the 12th day of August, 1848, the second on the 5th day of August, 1850. The subject-matter now under consideration, namely, "the reserved stock" depends upon the second of these contracts, by force of which the original contract to build the railroad was modified and changed in many important particulars. By this second contract the road was to be divided into four parts:

from the depot in Portland to the station house in Gorham, being the "First Division;" from Gorham to the Saco River, "No. 2;" from Saco River to Alfred, "No. 3;" from Alfred to the terminus, "No. 4." And the second contract provides that for the work on the first division, "as the same shall progress from the first day of August current, payment shall be made at the rate of fifty per cent., in cash, and twenty-five per cent. in the six per cent. bonds of the company hereafter described, and twenty-five per cent. in stock, reserving one half of the stock, as indemnity for the fulfilment of this contract until said division of said road shall be completed." The declaration avers, that after the making of the last-mentioned contract, the plaintiff proceeded in the performance thereof, and continued, down to the 19th day of August, 1851, to do all that was incumbent on him towards the fulfilment thereof on his part; that on that day, while proceeding with the work, and when he had nearly completed the "first division," and while he was willing to continue to execute his contract, the defendants removed him from his situation as contractor; and prevented him from completing the work and performing the residue of his contract.

Upon this declaration, the question is, whether the referee could take into consideration that claim in the contract, which entitled the plaintiff to receive from the company, twelve and a half per cent. of the contract price of the work upon the "first division" in the stock of the corporation, upon the completion of that work. It is entirely clear that the time for this payment had not arrived when this action was brought. The language of the contract is, that payment shall be made to the extent of twenty-five per cent. in stock, "reserving one half of the stock as indemnity for the fulfilment of this contract, until said division of said road shall be completed." The substance of this stipulation, and its legal as well as its practical effect, were, that until the "first division" should be completed, this part of the payment was not to be made. And the declaration avers, that when the plaintiff was prevented by the defendants from going on with the work, the first division had not been completed. The precise ground of action, therefore, so far as concerns this stock, was not that the defendants would not deliver it to him, for he had not become entitled to receive it; but it was, that by preventing him from completing the first division of the road, they have prevented him from acquiring a right to this stock. This was one of the benefits which would have accrued to him by the completion of his contract. Of this benefit they deprived him by stopping his work. And, consequently, the value of this right is, among other things, to be made good to him, he having lost it by the wrongful act of the defendants. Having set out in the declaration the contract which gave

him the right, and made its enjoyment dependent on the completion of the work, and having averred that he was prevented from completing it by the defendants, the declaration contains sufficient to lay the foundation for this claim of damages. Suppose the contract had stipulated that the price of the work should be paid on its completion, in some species of merchandise, and the defendants had prevented the contractor from completing the work. It would then have been necessary to ascertain at what time the contractor could and would, if not prevented, have finished the work; then to find the market value of such merchandise on that day, and then to allow the contractor, by way of damages, that market value, deducting the cost of completing the work; and all this would be done by the jury, under a declaration describing the contract, and averring that the defendants had prevented its completion. In our opinion, the assignment of the breach, that the defendants discharged the plaintiff from the work, and refused to permit him to complete it, was sufficient to enable the plaintiff to claim before the referee, all damages which naturally arose from that breach; and that the value of the stock, which the plaintiff was prevented by this breach from obtaining, constituted a part of those damages.

It was strongly argued by the defendants' counsel, that so far as the plaintiff had earned these stocks by work actually done, they were, in truth, his property; that he was their legal owner; that though they continued in the hands of the company, it was only that the latter might retain a lien thereon for their security; and that the company had been at all times ready to acknowledge his title. But whatever force this argument is entitled to, we think it was an argument to be addressed to the referee, and considered by him, in the exercise of the jurisdiction conferred on him by the parties. He was to determine what damages Myers was entitled to recover, by reason of any breaches of covenant by the defendants. alleged in the declaration. Among those breaches, was the refusal to permit him to finish the work. But the amount of damages which he should recover for this breach, necessarily depended on the general state of the account between the parties. He was entitled to recover the contract price of the work, deducting the cost of finishing the work, and deducting also so much of that contract price as had been paid to him by the company. Suppose the ground had been taken before the referee, which is taken here, that for twelve per centum of the work done on the first division the plaintiff had already received payment in stock pursuant to the contract, and, therefore, to that extent, could have no claim for damages by reason of the interruption of the work by the defendants; and suppose the plaintiff had then answered, as he now does, that the

provisions of the contract, taken in connection with what was done respecting this stock, did not amount to a payment pro tanto, and so did not reduce his claim; must not the referee have decided that question? and if he decided it in favor of the plaintiff, must he not have gone on and put a money value on this stock, which the plaintiff was entitled to receive as part of the contract price of the work? Whether such questions were in fact raised before the referee, we do not know, nor is it material. It is enough that they might have been raised; for if they could, and he had power to decide them, he did not exceed his authority, when he allowed the value of this stock, as estimated by him, as part of the damages he awarded. He has testified that he did not perceive how he could assess the damages in money without passing on this question, and we think he was justified in taking this view of his powers and duties. For reasons which will be presently more fully stated, we consider the decision of the referee final upon this question, which he had authority to decide. But if we were now to revise that decision, we do not perceive how we could declare it to be erroneous. The plaintiff, as already stated, was not to receive the reserved stock on account of the first division, until the contract for that division should be completed. The time for receiving this payment had not arrived; his title to it was yet incomplete when the action was brought. This stock was to be evidenced by certificates thereof issued by the company in pursuance of their charter and by-laws, describing and identifying the particular shares. So far as appears to us, no tender of any certificates of this stock was ever made by the company to Myers, and no admission made that there was any balance due him on general account. And the only act done by the company concerning this stock which has been shown to us is, that in the account exhibited by the company to the referee is the following entry:

The Amount of Stock Estimated to Mr. Myers by the Engineer.

| | |
|---|---|
| Amount of certificates issued | $65,000 00 |
| Amount of reserved stock | 31,435 33 |
| Amount of stock due Myers, Nov. 1, 1851 | 1,294 69 |
| Bal. stock due Myers and not issued | 1,294 69 |

Upon this state of facts, we are unable to see how the company could successfully maintain that this reserved stock had actually passed to the plaintiff and become his property. In this account they do not even treat it as due to him. The object which the parties had in view in the stipulation for its being reserved, the security of the company, could only be obtained by having the title continued in the company. No certificates having ever been issued, and no particular shares identified, the property was not the subject of a pledge, or mortgage, or

lien by contract, and the only mode in which it could stand as security, was to consider the whole contract as executory; that is, that the company agreed to issue certificates to him, and thus constitute him a stockholder to the extent of this twelve and a half per cent., when the first division should be completed; and, that until that time should arrive, no such shares were in existence, and the company was under no obligation to create them for his benefit. We are aware, that under some circumstances, a party may be the owner of stock in a corporation, though no certificate has been issued to him. But we consider such cases distinguishable from this case, by strongly marked features. Where the title of a party to receive a certificate is perfect, he may insist, as against the company, that he shall be treated as a stockholder. Where the obligation of a party to take a certificate is perfect, the company may insist that he shall bear the burdens of a stockholder. But where an executory contract is made by a corporation to issue shares of its stock to a party when he shall have done certain work, and the company prevent him from completing the work, make no tender of certificates, and do nothing to set apart any particular shares for his use, we do not think they can defeat the action of the contractor for damages, upon the ground, that the contract on their part, executed itself and made him the owner of the stock which they agreed he should have, and so he has no cause of complaint. Our opinion is, that this stipulation for a payment in stock, was executory merely; and the plaintiff no more became the owner of such an amount of stock, by doing a part of the work, than he would have become the owner of the defendants' money, while in the hands of their treasurer, if the whole payment had been to be made in money instead of partly in stock. The first, second, and third objections are, in our opinion, insufficient to prevent the acceptance of the award. The fourth and fifth objections to the award are, in substance, that the referee has awarded damages for prospective profits on work not actually done by the plaintiff.

At the hearing, the court intimated that it considered the law to be, that profits which the contractor would have made, if allowed to complete the work, were recoverable, as damages in this action; and that however this might be, the judgment of the referee upon the rule of damages was final. Upon this intimation, though the court expressed its willingness to hear the counsel, and to allow the referee to be examined, to ascertain what rule, he in fact adopted, the counsel declined to press their objections, and the referee was not examined on this subject-matter. Still, if on further reflection and examination, the court had found that its intimations were not well-founded, it would have given opportunity further to examine the referee. But we have not so found. Un-

der a contract for building part of a railroad, in its nature precisely like the one now before us, the supreme court, in the case of Philadelphia, W. & B. R. R. v. Howard, 13 How. [54 U. S.] 344, decided this question. It is there said, "It is insisted that only actual damages, and not profits, were in that event to be allowed by the jury. It must be admitted that actual damages were all that could lawfully be given, in an action of covenant, even if the company had been guilty of fraud. But it by no means follows that profits were not to be allowed. understanding as we must, the term profits, in this instruction, as meaning the gain which the plaintiff would have made, if he had been permitted to complete his contract. Actual damages clearly include the direct and actual loss which the plaintiff sustains propter rem ipsam non habitam, and in case of a contract like this, that loss is, among other things, the difference between the cost of doing the work and the price to be paid for it. This difference is the inducement and real consideration which causes the contractor to enter into the contract. For this he expends his time, exerts his skill, uses his capital, and assumes the risks which attend the enterprise; and to deprive him of it, when the other party has broken the contract, and unlawfully put an end to the work, would be unjust. There is no rule of law which requires us to inflict this injustice." Upon the other ground, the conclusiveness of the judgment of that tribunal to whose decision the parties have voluntarily submitted their case, we are equally clear. Unless we overrule the decision of Mr. Justice Story in Kleine v. Catara [Case No. 7,869], we must hold, that the judgment of the referee upon all questions of law and fact, necessary to a determination of the matter submitted to him, is final, and binding on the parties, in the absence of fraud and under regular proceedings in which no improper conduct is alleged. We are satisfied of the correctness of this rule, which has received the sanction of courts of great respectability, and among others, of the supreme court of Maine, in Brown v. Clay, 31 Me. 518, and of the supreme court of Massachusetts, in Boston Water Power Co. v. Gray, 6 Metc. [Mass.] 131. Our opinion is that the fourth and fifth objections are not tenable.

The remaining objections were, properly, not pressed at the hearing, and it is not necessary to notice them in detail. A referee may certainly make a general award, provided it appears on its face to embrace, and finally dispose of, what was submitted to him. He is not bound in a case like this, to show what disposition he made of each item in a long and complex account. If this case had been tried by the court and jury, the verdict and judgment would have shown no more particulars than are upon the face of this award, and the court does not exact of a referee of an action under a rule, any more fulness and

particularity of finding than the law has deemed sufficiently certain in its own regular proceedings.

The result is, that the objections to the award are found insufficient, and it must be accepted.

[This case was carried by writ of error to the supreme court, where the judgment of this court was affirmed. 18 How. (59 U. S.) 246.]