CASE 48.—ACTIONS BY B. F. DEVERS AGAINST CHARLES B.
MAY AND OTHERS, AND BY SAME PLAINTIFF
AGAINST M. D. MARTIN AND OTHERS INVOLVING
A RENT CONTRACT AND THE OWNERSHIP OF
CERTAIN EMBLEMENTS.—January 22.

# Devers v. May, &c.
# Same v. Martin, &c.

Appeal from Harrison Circuit Court.

L. P. FRYER, Circuit Judge.

From the judgments plaintiff appeals. Affirmed
in the first, and reversed in the second action.

1. Landlord and Tenant—Enjoyment of Premises—Refusal of
Lessor to Place Lessee in Possession—Measure of Damages.—
Where a lease of a farm is entered into and the lessor refuses
to place and keep the lessee in possession according to its
terms, the lessee's measure of damages is the difference
between the price he agreed to pay and the actual rental
value of the property, together with special damages on the
facts authorizing them.

2. Same.—Where a lessor refuses to place and keep the lessee
in possession according to the terms of the lease, the lessee
may recover in one action the difference between the price
he agreed to pay and the actual rental value of the property,
and such special damages as he has sustained.

3. Same.—Where a lessor of a farm refuses to place and keep
the lessee in possession, the lessee to recover general or
special damages need not allege or prove any effort to rent
other land or to engage in other occupations; the recovery
not being for loss of time or services, but as damages for
breach of a contract for the use of specific property.

4. Same—Evidence—Admissibility.—In an action by a lessee for
the refusal of the lessor to place and keep him in possession
of the premises, evidence that the premises for the term of
the lease were worth a specified sum more for the uses for

Devers v. May, &c.

which the lessee had rented it than the agreed rent was admissible on the issue of damages.

5.  Same—Crops—Rights of Tenant.—Ky. Stats., 1903, sections 3862, 3863, provide that all the emblements of the lands of a person dying after the 1st day of March which shall be severed before the last day of December following shall be assets in the hands of his personal representative, and all the emblements growing on the lands the last day of December or at his death, if that shall happen after that date and before the 1st day of March, shall pass with the land to the heir or remainderman. An owner of a third person's life estate executed in September, 1903, a lease thereof to a lessee for a term of one year from March 1st following. In October, 1903, the third person died. Previous to his death the lessee had sown wheat on the premises. Held that, as the lessee occupied the same relation towards the premises as the life tenant did, he was not entitled to an interest in the wheat as emblements, because though the life tenant died after March 1st of that year, the wheat could not be severed from the land before the last day of December following.

J. J. OSBORNE counsel for appellant.

POINTS AND AUTHORITIES CITED.

1.  On question as to measure of damages recoverable by Devers from Martin & Drane. (Smith v. Phillips, Jr., 16 Ky. Law Rep., 615; Wells v. Nat'l Life Ass'n Hartford, 53 L. R. A., 98 99 100, 103; Sutherland on Damages, 3rd Ed., sections 863, 864, 865; Page on Contracts, vol. 3, section 1588.)

2.  As to appellant's right to emblements in the wheat. (Bradley v. Bailey, 1 L. R. A., 427; Lawson's Rights, Remedies and Practice, vol. 6, section 2682; Moreland, &c., v. Myall, &c., 14 Bush, 478; Lafferty v. Schuylkill River East Side R. R. Co., 3 L. R. A., 124; Batterman v. Allbright, 11 L. R. A., 801; Redmon v. Bedford, &c., 80 Ky., 13; Ky. Statutes, sections 3863, 3864, 3865; Acts 1851, page 251.)

3.  On the proposition that where a party, by his own contract, creates a duty or charge upon himself, he is bound to make good his undertaking, notwithstanding any inevitable necessity, or accident, or act of God. (Lawson's Rights, Remedies and Practice, vol. 5, section 2520, and cases cited in Note 6; 44 L. R. A., 557, Smith v. N. American Transportation & Trading Co.; 14 L. R. A., 215, Stewart v. Stone; 21 L. R. A., 645, Renny v. Olds; 57 L. R. A., 707, Southern Pacific Co. v. H. A. Schoer; 6 J. J. Marshall, 527, Singleton v. Carrol, etc.; 3 T. B. Monroe,

Devers v. May, &c.

376, Bohannon v. Lewis; and also page 138, same book, Beatty v. Scrivener: 14 B. Monroe, 332, Sweeney v. Owsley; 18 Am. Reports, 39, The District Township &c., v. Smith; 82 Am. Dec., 349, Tompkins v. Dudley; 72 Am. Dec., 373, Supt. &c., Public Schools of Trenton v. Bennett, &c.)

W. S. CASON, attorney for appellees C. B., H. S., and Anna S. May.

A concise definition of emblements, limited to the circumstances of the case on trial would be, that it is the right of the tenant of a life tenant to enter upon the land after the death of the life tenant, to harvest the crop sown by him before the death of the life tenant. (Ky. Statutes, sections 3862, 3863, 3864, 3865.)

M. C. SWINFORD, attorney for appellees, Martin and Drain.

We hold to the view that where there has been nothing wilful on the part of the lessor in the failure to carry out a contract of rental, and no damages are alleged as to any extra trouble or expense sustained by the lessee by reason of any conduct on the part of the lessor, that only actual damages can be recovered.

### AUTHORITIES CITED.

Smith v. Phillips, 16 Ky. Law Rep., 675; Newman on Pleading, 336, 357, 360 and 382; Sousley v. Burns, Adm'r, 10 Bush, 87; Miles v. Miller, 12 Bush, 134; Lanigan v. Kille, 39 Am. Rep., 797 (97 Pa., 120); Chamberlain v. McAllister, 6 Dana, 352; E. & P. R. R. Co. v. Pottinger & Bro., 10 Bush, 185; Koch v. Godshaw, 12 Bush, 318.

OPINION OF THE COURT BY JOHN D. CARROLL, COMMISSIONER—Affirming in first case and reversing in the second.

These two cases growing out of the same transaction will be disposed of together. Martin and Drain owned the life estate of J. C. May in a tract of land containing about 120 acres. On September 2, 1903, they entered into the following contract with the appellant, Devers: "M. D. Martin hath this day rented or leased to B. F. Devers the farm known as

the May farm, adjoining W. A. Webber, containing 120 acres of land, for the term of one year, that is, from the first day of March, 1904, to the first day of March, 1905. The west field about 36 acres, that is in corn and tobacco, is to be put into wheat, and either clover or timothy. The field next to it and between it and the toll house is, to be put into corn and tobacco, not more than six acres of tobacco. The balance of the farm to remain in grass. Devers is also to make a good and substantial woven wire fence along the pike from the gate that goes into the west field to the toll house, and to pay Martin and Drain $200 on the 1st day of August, 1904, $100 on the 1st day of January, 1905, and $100.00 on the 1st day of March when the lease expires, and to give peaceable possession.'' In October, 1903, J. C. May died, but previous to his death Devers had built the fence mentioned in the contract and had sown the wheat. The death of Mr. May terminated the interest of Martin and Drain in the land, and it became the property of the appellee Charles B. May and the other children of J. C. May. Soon after the death of May, Martin and Drain surrendered to Devers the notes he had executed to them for the rented land, and, being unable to make any satisfactory arrangement with Mays, Devers brought this suit against Martin and Drain and the children of May to recover the value of the fence built and the wheat sown, and damages for being deprived of the use of the leased premises. Before the case was submitted to the jury Devers dismissed so much of the action as sought to recover against the Mays, but prosecuted the action against Martin and Drain, obtaining judgment against them for $161.50 on account of the fence and wheat, being limited to these items by instructions of the court. After this judgment

was rendered Devers brought a separate suit against the Mays, seeking to recover from them the value of three-fifths of the wheat harvested from the ground that he had sowed, alleging its value to be about $345. To this pleading, demurrers, and motions to strike out were filed, resulting finally in the dismissal of the action. From this judgment Devers appeals, and also prosecutes an appeal from the judgment in the case of Martin and Drain, alleging that the court committed error, to his prejudice, in rejecting evidence and misinstructing the jury.

We will first dispose of the questions raised in the case against Martin and Drain. During the trial of the case Devers offered to prove that the farm in October, 1903, and from that time until March 1, 1904, was worth at least $500 more money for the uses for which he had rented it than the price he agreed to pay for it. This evidence, on motion of Martin and Drain, was excluded from the jury, and the only testimony admitted was concerning the value of the fence built and the expense Devers was put to in purchasing and sowing the wheat. Devers also asked the court to instruct the jury in substance that if Martin and Drain refused to deliver possession of the leased premises to him on or before March 1, 1904, and to keep him in possession of said farm for the year ending March 1, 1905, they should find for him such sum in damages as he sustained thereby, not exceeding the amount claimed in the petition; and further asked the court to say that the measure of damages recoverable was the increased value of the lease, if any, above the amount that he had agreed to pay for it. The contract between the parties obligated Martin and Drain unconditionally to put and keep Devers in possession of the leased premises, and there is no provision in it relieving them from their obliga-

tion in the event May should die before the termina-
tion of the lease.   Although they alleged in their
answer that it was distinctly understood at the time
the contract was entered into that they only owned
the life estate of May in the land, and that, if the
death of May occurred before the termination of the
tenancy, all right and control in the land on their part
ceased, and Devers from that time must look to the
Mays as his landlords, and for possession and control
of the land, but that by mistake and inadvertence
these conditions were omitted from the contract.
There was also evidence introduced tending to sus-
tain this contention of Martin and Drain.   On the
other hand, Devers denied that any condition or
agreement of this kind was mentioned or omitted
from the contract.   It was also pleaded that Devers
was not to erect the fence until his tenancy began,
but neither of these issues were submitted to the jury.

The only question presented on this appeal for our
consideration as between Devers and Martin and
Drain is: Was Devers under the contract (assuming
that there was no mistake in its execution) entitled
to damages on account of the failure of Martin and
Drain to place and keep him in possession of the
leased premises during the terms mentioned in the
contract?   And, if so, what is the measure of damages
he is entitled to?   This question must be considered
as settled in this State by the opinion in Smith v.
Phillips, 29 S. W. 358, 16 Ky. Law Rep. 615.   In that
case in November, 1892, Smith rented a tract of land
from Phillips for the year beginning January 1, 1893.
Phillips refused to place Smith in possession of the
premises, and Smith brought an action in damages
against him; and this court said that: "On the fail-
ure or refusal of the lessor to give possession of the
premises, a rule which would allow the lessee to re-

Devers v. May, &c.

cover as damages the difference between the amount he agreed to pay and the value of the lease on the day possession was to be given would be a simple and certain method of ascertainment of damages. * * * We think the rule should be to allow the lessee to recover the actual damages which approximately flow from the breach.   However, if a lessee desires to do so, he may waive any claim he might have for any special damages, and recover the difference between the contract price and the value of the lease on the day possession should have been given under the contract." The court also held that this rule as to the measure of damages was not to be inexorably applied in all cases, and that a state of facts might be presented that would authorize a lessee to recover special damages, as where there was no difference between the rental value of the property and the price agreed to be paid for it, but the lessee had incured expense and sustained damage in preparing and removing to the premises and in other respects. Kelly v. Davis, 9 Ky. Law Rep. 647.   We consider the law correctly laid down in these cases.   It is in harmony with the prevailing rule on the subject, as can be seen by an examination of Sutherland on Damages, section 864; Sedgwick on Damages, section 1022; Jonas v. Noel (Tenn.), 39 S. W. 724, 36 L. R. A. 862; Cohn v. Norton (Conn.), 18 Alt. 595, 5 L. R. A. 572.   We therefore again declare that when a valid contract for the lease of a farm is entered into, and the lessor refuses to place and keep the lessee in possession according to the terms of the lease, the measure of damages the lessee is entitled to recover for the breach of contract is the difference between the price he agreed to pay and the actual rental value of the property; and, the facts authorizing it, the lessee in the same action may recover such special

damages as he has sustained. Nor is it necessary
to entitle the lessee to recover general or special
damages that he should allege or prove any effort
upon his part to rent other land, or to engage in
other occupations, because the recovery is not sought
on account of loss of time or services, but as damages
for the breach of a distinct contract for the use and
possession of specific property. It follows that the
court erred in rejecting the evidence offered by
Devers showing the difference between the contract
price and the rental value of the land, and in failing
to instruct the jury upon this issue. If there was a
mistake in the contract, or if it was entered into with
the understanding and agreement upon the part of
Devers that Martin and Drain only owned the life
estate, and that their interest in and control over the
property ceased with the death of Mr. May, and
thereafter Devers must look entirely to the Mays for
protection—questions we do not, of course, determine
—the rights of the parties should be adjudged accord-
ingly, and the contract reformed to express the true
agreement between the parties.

In respect to the case of appellant against the Mays
to recover the value of a portion of the wheat sown
by him and harvested by them, we are of opinion
that the trial judge correctly ruled that appellant
was not entitled to recover. Under the common law
it is said in Blackstone, book 2, p. 121, that: ''A
tenant for life, or his representative, shall not be
prejudiced by any sudden determination of his estate
because such a determination is contingent and uncer-
tain. Therefore, if a tenant for his own life sows
the land and died before harvest, his executor shall
have the emblements or profits of the crop, if the
estate was terminated by the act of God. The repre-
sentative therefore, of a tenant for life shall have

the emblements to compensate for the labor and expense of tilling, manuring and sowing the lands.'' And emblements, on the authority of the same book, embraced ''not only corn sown, but roots planted, or other annual artificial crops.'' And so, in Taylor on Landlord & Tenant, sec. 534, it is laid down that: ''A tenant for life, or his legal representatives and undertenants, as well as a tenant for year to year or at will, is entitled to emblements, which means that he may take and carry away within a reasonable time after his tenancy has ended such annual productions of the soil as are raised by his labor, as corn, hops, flax, and the like, * * * and the general rule is that, if the term is so uncertain that the tenant at the time he sows his crop cannot know that his tenancy will continue until he shall have reaped it, he will be entitled to the crop as emblements.'' But this rule of common law has been changed by statute, and is not in force in this State except to the extent allowed by the Kentucky Statutes of 1903, which provides, in section 3862, that ''all the emblements of the lands of a person dying after the first day of March which shall be severed before the last day of December following shall be assets in the hands of his personal representative.'' And in section 3863 that: ''All the emblements growing on the lands on the last named day, or at his death, if that shall happen before the last day of December, and before the first day of March, shall pass with the land to the heir, devisee, reversioner or remainderman.'' These two sections are to be read together. In fact, in the Revised Statutes they were embraced in one section; the language being identical with that found in the two sections in the present statute. Under this statute the personal representative of a person who dies after the 1st day of March is entitled to all the emble-

ments which shall be severed before the last day of December following, but the emblements growing on the land on the last-named day, or at the death of the tenant, if he dies between the last day of December and the 1st day of March, shall pass with the land to the heir, devisee, reversioner or remainderman. It will thus be seen that Devers, who may be said to have occupied the same relation towards the land as the life tenant May, was not entitled to an interest in the wheat as emblements, because, although May died after the 1st day of March, the wheat could not be severed from the land "before the last day of December following," and, as the emblements were growing on the land on the last day of December. they passed with the land to the remainderman.

Wherefore the judgment of the lower court in the case of Devers v. Charles B. May, etc., is affirmed, and the judgment in the case of B. F. Devers v. M. D. Martin, etc., is reversed, with directions for a new trial in conformity with this opinion.