## Harness, et al. v. Kentucky Fluor Spar Company.

(Decided June 14, 1912.)

### Appeal from Crittenden Circuit Court.

1. Contracts—Personal Service—Action to Recover for Breach of.—
   In a suit to recover damages for the breach of a contract for personal services, the plaintiff must allege, not only the breach, but an effort on his part to secure and a failure to obtain other employment during the period which would have been required for the performance of the contract sued on.

2. Contracts—Mines and Mining—What is not a Contract for Personal Service.—A contract, whereby the plaintiffs agreed to "mine and prepare ready for the wagons," all the fluor spar in a

specified portion of a mine, and to leave the collar around the main shaft, and to timber up the ground in a substantial manner, using timbers of good quality sufficient to hold the ground except in cases of accident and from the rotting of the timbers, and to furnish everything neessary for the mining operations, is not a contract for personal services, since it contemplated that the plaintiffs could have employed others to do the mining called for by the contract.

3. Contracts—Mines and Mining—Measure of Damages.—Where a mineowner contracted with a miner to do certain mining at a stipulated price per ton, and subsequently refused to permit the miner to carry out the contract, the miner's measure of damage for a breach of the contract was the reasonable profit which he would have realized over and above the cost to him, of the mining called for in the contract.

CARL HEDERSON and L. H. JAMES for appellants.

BLUE & NUNN and A. C. & V. Y. MOORE for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The appellants brought this action to recover $1,500 damages from appellee, The Kentucky Fluor Spar Company, for a breach of the following contract:

"Marion, Ky., May 24, 1911.

"This contract made between the Kentucky Fluor Spar Company and Harness Brothers and Turley, witnesseth: That the said second parties agree to mine and prepare ready for the wagons all the fluor spar (surface spar) in the seventy foot level, between the main air shaft and the air shaft south of that, in the Memphis mine of the Kentucky Fluor Spar Company. They agree to leave the collar around the main shaft, and to timber up the ground in a substantial manner, using timbers of good quality, sufficient to hold the ground except in cases of accident or from the rotting of the timbers. They are to furnish everything necessary for the mining operations, except that the Kentucky Fluor Spar Company agrees that they may use any and all machinery or tools they may have on the ground, including boilers, hoists, etc., except that the company reserves the right to sell said machinery if a trade is made for the whole lot. The company agrees to pay Harness Brothers and Turley three dollars ($3.00) per ton for all spar so mined by them. In case all the spar is not No. 1 they agree to keep

the No. 1 spar from the lower grades, in piling same ready for the wagons.

"Witness their hands this 24th day of May, 1911.

"KENTUCKY FLUOR SPAR COMPANY.

"Per H. A. HAYNES,

"Secretary.

"O. D. HARNESS,

"TOM HARNESS,

"BEN TURLEY."

The petition sets up the contract in appropriate terms, and its breach by appellee. The petition contains this further allegation:

"The plaintiffs further state, that for the purpose of carrying out said contract, they made every necessary preparation, in good faith therefor, not planting as they would otherwise have done practically any crop, and after these preparations and omissions on the part of the plaintiffs to plant crops, all for the purpose of complying with and carrying out said contract, the defendant notified the plaintiffs to not carry out said contract or to do any mining of said minerals or other things therein specified, thereby forfeiting and violating its said contract with these plaintiffs, and thereby refused and prevented these plaintiffs from performing or carrying out said contract, which they were willing, able and ready to do."

The plaintiffs further alleged that the quantity of spar which they contracted to mine for appellee under the contract was at least one thousand tons, which they could have mined at a cost, in labor and expenses, not exceeding $1.50 per ton, thereby leaving a net profit to plaintiffs of $1.50 per ton, amounting in the aggregate to the sum of $1,500 profit which they would have realized had they been permitted to carry out the contract. The circuit judge being of opinion that the employment under the contract was wholly personal in its character, and was an employment to perform labor personally, and not an undertaking by a contractor to have the labor performed through others, held that the petition was defective because it failed to allege that plaintiffs sought and failed to find other employment during the time they would have been engaged in carrying out the contract sued on. He therefore sustained a demurrer to the petition; and the plaintiffs declining to amend, the pe-

tition was dismissed. From that order the plaintiffs prosecute this appeal.

The ruling of the circuit judge was based upon the theory that the suit was to recover damages for the breach of a contract for personal service, and that in order to recover in such a case the plaintiffs must allege, not only the breach, but an effort to secure and a failure to obtain other employment during the period which would have been required for the performance of the contract sued on. In support of the judgment of the circuit court appellee relies upon the line of cases represented by Lewis v. Scott, 95 Ky., 484; Raleigh v. Clark, 114 Ky., 738; Smith v. Ohler, 31 Ky. L. R., 1275, 102 S. W., 277, and other cases of that character.

It will be noticed, however, that Lewis v. Scott was a contract for personal services for a given term at specified wages and the rule contended for by appellee was for that reason, properly applied. The same may be said generally as to the other cases relied upon by appellee.

Smith v. Ohler was a suit for damages for the breach of a grading contract, where Ohler was working a large number of teams at a given price per day. Raleigh v. Clark was a surface water and ditch case, and has no application to the case under consideration.

Turning to the petition and contract in the case at bar, it will be noticed that appellants not only contracted to mine approximately a thousand tons of fluor spar at $3 per ton, but they further agreed to timber up the ground in a substantial manner, using timbers of good quality, sufficient to hold the ground except in cases of accident or from the rotting of the timbers, and to furnish everything necessary for the mining operations except the machinery and tools, which the appellee agreed to furnish under certain conditions. This is not a contract for personal services at fixed wages for a specified term; on the contrary, it is a contract to mine an unascertained amount of spar at an agreed price of $3 per ton. There is no element whatever in the contract indicating that the employment was personal in its character, or that the appellants could not have had the labor performed by others. On the contrary, if any presumption is to arise from the character of the contract it is that the appellants were to do the mining by the employment of others besides themselves.

The question here presented has frequently been be-

fore the courts, and the distinction above suggested repeatedly recognized.

Wolf v. Studebaker, 65 Pa., 459, contains a valuable general discussion of the subject, which we will quote at length for the sound reasoning it contains upon this phase of the question. The fact that the Pennsylvania Supreme Court adopted a measure of damages for breach of contract by a lessor to put his lessee in possession that is slightly different from that approved by this court in Devers v. May, 124 Ky., 394, does not affect the strength of the argument upon the point under discussion.

The court said:

"The plaintiff claimed to recover the value of his contract, that is to say, what he might reasonably have made out of it, for his damages. * * *

"This, as a rule, does not seem to have been controverted by the defendant. But she was permitted to prove, under objection, in mitigation of damages, by one, Abraham May, as follows:

" 'Wolf was engaged in hauling for the bridge in the summer of 1867; he commenced hauling in June and continued up to the cold weather; before this he was working lots around; after this he marketed some. Wolf and I looked over his books at one time, and his earnings amounted to about $1,000; he hauled after this; he hauled hay to his own stable, and some to Bowman's in the latter part of March; his property consists of a house and stable, and about a quarter of an acre of land; I was at Wolf's sale,' &c.

"The earnings of this man in this way, it was thought by the learned judge, should to the extent of them mitigate the damages arising from the defendant's broken contract; in other words, the logic seemed to be that because he was an industrious man, he was not within the same rule of compensation that one not so would be. There are undoubtedly cases in which such facts do mitigate damages. Such commonly occur in cases of the employment of clerks, agents, laborers or domestic servants, for a year or a shorter determinate period. But I have found no case where a disappointed party to a contract for a specific thing or work, who, taking the risk from necessity, of a different business from that which his contract if complied with would have furnished, and shifting for himself and family for employment for them and his teams, is to be regarded as doing it for the bene-

fit of a faithless contractor. It seems to me, therefore, that the rule upon which the testimony quoted was admitted was wrested from its legtimate purpose, and applied to an illegitimate one. In 2 Greenleaf Ev., Sec. 261a, the distinction is marked between 'contracts for specific work and contracts for the hire of clerks, agents, laborers and domestic servants for a year or shorter determinate periods.' In that case the learned author shows that the defendant may prove, on a breach of the contract, 'either that the plaintiff was actually engaged in other profitable service during the term, or that such employment was offered to him, and he rejected it.'

"There is an evident distinction between such a hiring and a contract for the performance of some specific undertaking. In the one case, the party can earn and expect to earn no more than single wages, and if he gets that his 'loss will generally be but nominal. King v. Steiren, 8 Wright, 99, was of this nature. Whereas, in the other case the loss of the party is the loss of the benfits of the contract he is prepared to perform. In Costigan v. The Railroad Company, 2 Denio, 609, in a case of hiring for personal service, where the party was dismissed before his term had expired, it was held he was not obliged to seek employment, nor perform services offered him of a different nature from that he had engaged to perform, in order to recover full damages for disappointment. In analogy to this principle, I would say, that where a disappointed contractor for the performance of a specified thing finds something of a different nature from his contract to do, his doing it ought not to mitigate the damages for the breach of his contract by the other party. Indeed, there is enough in the difficulty of applying such a rule to discard it. It would necessarily involve proof of everything, great and small, no matter how various the items done by the plaintiff during the period of the contract might be, and how much he made in the meantime. It happened in this case, that a witness saw the plaintiff's book, and testifies from it that he had earned $1,000. The expense incurred in earning it, he did not see, or, if he did, did not disclose. But this single case ought not to furnish a rule in other cases. It cannot be that results utterly unconnected with the cause of action and the party sued can be made to tell to his advantage. * * *

"We think that that which should mitigate damages in a contract like that we are considering should be

something resulting from the acts of the party occasioning the injury, or from the contract itself. The damages may be said to be fixed by the law of the contract the moment it is broken, and I cannot see how that is to be altered by collateral circumstances, independent of, and totally disconnected from it, and from the party occasioning it.''

In Sullivan v. McMillan, 37 Fla., 134, McMillan sued for damages for breach of a contract, whereby he agreed to deliver to Sullivan all the logs of specified dimensions growing upon the land of Sullivan, and the latter refused to receive a large portion thereof. It would have taken McMillan two years to complete the contract, and after the breach McMillan, with his teams, engaged in other work of delivering logs under other contracts, to other persons. Sullivan sought to lessen his liability by proving what gains and profits McMillan had made by his own labor and the use of his teams in such other work and contracts during the time it would have taken him to complete the contract with Sullivan, but the trial court excluded all evidence upon that subject.

In affirming that ruling the Supreme Court of Florida said:

''It is urged by appellants that the plaintiffs, when they received notice that the defendants would not further comply with or perform the contract, should have done all that reasonably lay within their power to protect themselves from loss, by seeking other contract of like character, and that the plaintiffs having sought and obtained such a contract immediately after the breach sued upon, the defendants were entitled to have a proportionate amount of the profits applied in mitigation of the damages for which they were liable. Otherwise it is contended that the plaintiffs would make two profits for the same time and with the same teams, and that speculation would be substituted for compensation, which is the basis of the law of damages for breaches of contract. These propositions are undoubtedly correct when applied to some class of cases. They have special reference to contracts for personal services, or for the use of some special instrumentality, either with or without connection with such personal services. Thus in a contract for teaching in a school, which was broken by a refusal to receive the services, it was held to be the plaintiff's duty to make reasonable exertion to obtain other like employment in the same vicinity, and thus mitigate the damages.

Gillis v. Space, 63 Barb., 177; Benziger v. Miller, 50 Ala., 206. The same rule was laid down for a similar breach of a contract with an actress. Howard v. Daly, 61 N. Y., 362, S. C. 19 A. M. Rep., 285.

"The contract which was broken in the present case was not one for personal services nor one which the parties contemplated should be performed with any special means or instrumentality. It was simply a contract for the delivery of certain logs at a certain place, and might have been performed by the plaintiffs with their own teams and personal labor, or by any other means or agency to which they might have seen fit to intrust the performance of the same. There is nothing in the contract to show that the execution of the same required all or any great portion of the time or personal attention of both or either of the plaintiffs; or that it was impracticable for plaintiffs to be engaged in other business and the performance of other contracts contemporaneously with the performance of the contract in controversy. We do not think the rule invoked as to mitigation of damages, by subsequent earnings and profits, applies to this case. A distinction is recognized between a case of the character of that now before us, and those to which we have alluded. 2 Greenleaf on Evidence, sec. 261; Watson v. Gray's Harbor Brick Co., 3 Wash., 283, 28 Pac. Rep., 527; 1 Sedgwick on Damages, sec. 208; Wolf v. Studebaker, 65 Pa. St., 459; Crescent Manufacturing Co. v. Nelson Manufacturing Co., 100 Mo., 325; Nilson v. Morse, 52 Wis., 240, text 255, 9 N. W. Rep., 1; Cameron v. White, 74 Wis., 425, 43 N. W. Rep., 155; Field on Damages, sec. 339.

"There was no legal obligation upon the plaintiffs in this case to enter upon the performance of other contracts for the benefit of the defendants. The Supreme Court of Wisconsin, in Cameron v. White, supra, where a contention like that of appellants in this case was made, as we think, properly said: 'As the plaintiffs could not enhance the damages against the defendant by their neglect to make the best of what they had on their hands, so they are not bound to lessen the damages by making other contracts, and performing them, and giving the benefit of the performance of such contracts to the defendant.'

"In Crescent Manufacturing Co. v. Nelson Manufacturing Co., supra, where an attempt was made to offer

evidence similar to that excluded in the present case, it was said:

"'Where a servant is wrongfully discharged during his term and lays his damages at the contract wages for the balance of the term, it is generally held that evidence may be introduced in mitigation of damages of what he might have earned in the interim by using reasonable efforts to procure other employment. So in general, where a party has been injured or damaged by a breach of a contract, he should do whatever he can to lessen the injury. Many cases asserting these principles of law are cited by the defendant, but they have no application to the case in hand. The plaintiff owned its factory and the machinery, and the contract constituted no such relation as that of master and servant. It had the right to make as few or as many other contracts as it saw fit whilst executing the contract with defendant, and it is entitled to the profits which it might have made on this particular contract. The evidence offered in mitigation of damages was properly excluded.'

"From what has been said by us, and quoted with approval from the decision of other courts, it follows that we are of the opinion that the circuit court did not err in excluding the testimony offered, and that the doctrine that one who has been injured by the breach of a contract must do all that is reasonably within his power to mitigate the damages caused thereby, does not prevail to the extent that one who is injured by a violation of an agreement to do a specific act not necessarily involving personal services, must seek and perform other contracts for the benefit of one who, by breaking faith with him, has caused the injury."

In Watson v. Gray's Harbor Brick Co., 3 Wash., 287, Watson contracted to sink a well to a depth not to exceed 500 feet for the brick company at a stipulated price per foot, and the brick company having refused to let him dig the well, Watson sued for damages, estimating his loss of profits at $300.00. The trial court excluded testimony tending to show that Watson had received a lucrative employment, out of which he made a profit, for digging wells for other persons during the time he would have been engaged in digging the brick company's well; and in sustaining that ruling the Supreme Court of Washington said:

"There is a well defined distinction drawn by all

the authorities between contracts for hire, or for personal service, and the contracts to do a specific act. In the former case, if the plaintiff gets employment at the same wages, it is plain that he is not damaged, and when he does not his damages are easily ascertained. In the latter species of contract, where the employer refuses to accept of the services, or to have the work contracted for performed, or prevent the employe from performing the same in any manner, the usual measure of damages, where the contract relates to the manufacture of an article, or the construction of a building, or the performance of some other specified act, is the difference between the price agreed to be paid and what it would have cost the employe to complete it, provided such costs would be less than the contract price. Field on Law of Damages, sec. 339. The duty to seek employment is dependent upon the original contract being one of employment or hire. It is not applicable to every contract. Sedgwick on Damages, sec. 208. It was held by the Supreme Court of Pennsylvania, in Wolf v. Studebaker, 65 Pa. St., 459, a leading case decided in 1870, that ordinary contracts of hire, and contracts for the performance of some specified undertaking, cannot be governed by the same rule. That in one case the party can earn no more than the wages, and if he gets that his loss will be but nominal, whereas, in the other case, the loss of the party is the loss of the benefit of the contract. The damage may be said to be fixed by the law of the contract the moment it is broken, and cannot be altered by collateral circumstances independent of and totally disconnected from it, and from the party occasioning it.

"To plead the doctrine of avoidable consequences to such case, said the court, 'would necessarily involve proof of everything, great and small, no matter how various the items done by the plaintiff during the period of the contract might be, and how much he made in the meantime.'

"The case at bar is a signal instance of attempting to apply such a rule to this kind of a contract; a voluminous mass of evidence was submitted for the digestion of the jury concerning other contracts performed by this plaintiff; how much profit he made out of this contract, and how much loss he sustained in that; the condition under which he labored in other contracts, compared with the condition under which he would have

labored in the performance of the contract sued on, the respective conditions of the soil in the different locations, as to the relative amount of clay, gravel, sand, etc.; showing conclusively that it was an introduction of an impracticable element of proof, and had no approximate relation to the contract itself. If the rule was to be observed that the damages proven must be direct and approximate, the same rule must be invoked in the reduction of damages. Mr. Sedgwick says that 'while the rule is of very general application, the circumstances of many contracts forbid its application.' This, we think, is one of those cases. The distinction between contracts for piece work and time contracts, according to the phraseology of Mr. Greenleaf, is recognized by that author in his work on Evidence, vol. 2 (14th ed.), sec. 261a. Prevention by the employer gives the right to damages for loss of the profits.

" 'The profits which are permitted to be recovered are those which are the direct and immediate fruits of the contract. These are part and parcel of the contract itself, entering into and constituting a portion of its very elements; something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfillment of any other stipulation. They are presumed to have been taken into consideration and deliberated upon before the contract was made, and formed, perhaps, the only inducement to the arrangement. In an action upon the contract against the employer for preventing the complete performance, the contractor is entitled to recover the contract price for the work actually done, and, in the absence of other damages, the difference between the contract price and what it would cost to perform the contract as to the residue.' 2 Sutherland on Damages, p. 522.

"In Myers v. York & Cumberland R. R. Co., 2 Curt., 28, it is held that in an action of covenant, the plaintiff having been wrongfully prevented by the defendant from completing the work, the measure of damages is the difference between the price agreed to be paid for the work and what it would have cost the plaintiff to complete it. When one contracts to perform work for another at a stipulated price, and is prevented by him from entering upon the performance, the measure of damages is the difference between the cost of performing the work by the party agreeing to do it and the price

agreed to be paid for it; or, in other words, the profits the party would have received. George v. Cahawba, etc., R. R. Co., 8 Ala., 234. This was a special contract between plaintiff and defendant by which he was to perform certain work and labor on the road for certain compensation to be paid him. To the same effect is Richmond v. Dubuque & Sioux City R. R. Co., 26 Iowa, 191. In fact, we think that in contracts of this kind the rule of profits is thoroughly established, and as said by the Supreme Court of the United States in Philadelphia, etc., R. R. Co. v. Howard, 13 How., 344, that 'Whereas profits are spoken of as not a subject of damages, it will be found that something contingent upon future bargains, speculations or states of the market are referred to, and not the difference between the agreed price of something contracted for and its ascertainable value or cost.' "

We are not without decisions by this court covering this character of case. In Blood v. Herring, 22 Ky. L. R., 1725, 61 S. W., 273, the appellee agreed to saw 400,-000 feet of lumber and put it on barges for a stipulated sum, and after they had sawed and placed on barges 168,000 feet of the lumber, the appellants refused to permit them to saw any more lumber under the contract. Appellees then sued to recover of appellants the damages resulting from the violation of the contract; and one of the questions involved was, what was the measure of damages? In answering that question this court said:

"Appellant also complains of instructions Nos. 1 and 2. Of the first, upon the ground that recovery is authorized upon the basis of a calculation of profits, which might have accrued, if they had been permitted to go on with the work under the contract, it being insisted that under the testimony that these estimated profits were too vague and uncertain in character to have authorized recovery. This identical question has been frequently before this court, beginning with the case of the E. & P. R. R. Co. v. Pottinger, 10 Bush, 188, in which it was held, viz.: 'That profits which are the direct and immediate fruits of a contract alleged to have been violated, are part and parcel of the contract itself, and must have been in the contemplation of the parties when the agreement was entered into, may be recovered in an action for damages.'

"This case has been so frequently followed that it

may be regarded as settled law on this question, and we think the instruction is not objectionable.

"Instruction No. 2, is as follows: 'The court further says to the jury that if they believe from the evidence that plaintiff is entitled to recover in this case, then the measure of the damages would be the difference between the cost of sawing and putting on the banks of the Cumberland river of the 214,000 feet of lumber, not cut by them under said contract, and the actual cost to plaintiff of cutting and placing said lumber on the banks of said river.'

"This instruction lays down no measure of damage to guide the jury. The true test was, and probably what the court intended to say to the jury, the difference between the actual cost to plaintiff of putting the lumber on the barges for defendants and the contract price."

Again, in Horn v. Carroll, 28 Ky. L. R., 840, 90 S. W., 559, we further said:

"The appellees sold the appellant timber of a specified character on a certain tract of land. By the terms of the contract Carroll agreed to manufacture the timber into cross ties at ten cents per tie. He claims that after doing part of the work the appellant prevented him from completing it and he sought to recover damages therefor. He claims that he was damaged to the extent of $50. The issue was submitted to the jury by instructions Nos. 1 and 2. It is urged that the court did not properly submit it to the jury, because it allowed the plaintiff to recover even if he did not use diligence to obtain employment. This was not error, because the appellant did not agree to perform personal services. He could have had the ties made by some one whom he might have employed to do it. If there was a breach of the contract, as claimed by appellee, he was entitled to recover damage to be measured by the reasonable profits which he would have realized over and above the cost to him of cutting the ties."

And, in the late case of Sagamore Coal Co. v. Clark, 33 Ky. L. R., 137, 109 S. W., 351, the plaintiffs agreed to remove the stumps, pillars and all the coal in place and remaining in two parts of the defendant's coal mine at seventy-five cents per car load. They removed the coal from the first part of the mine, but were not allowed to complete the contract by removing the coal from the second part of the mine; whereupon Clark sued the coal

company for damages, to be measured by the profits he would have realized upon this unperformed portion of the work, which he alleged was ten cents per car. In sustaining his contention the court said:

"Manifestly the demurrer should have been over-ruled, as the petition stated a good cause of action for a breach of the contract therein set forth.  *   *   *

"Appellant further complains that the instructions were wrong as to the measure of damages; that instead of advising the jury as was in substance done that if they found for appellees they should allow them damages in such sum as the evidence might show they would have earned under the contract by way of profits, if any, in working part No. 2 of the appellant's mine, over and above the labor and other expense they would have incurred in such work, they should have been told that appellees could only recover the actual loss sustained by being deprived of working part No. 2 by the act of appellant; and that, if during the time they would have been engaged in working part No. 2 but for appellant's violation of the contract they obtained and performed other mining work which paid them as much as they would have made by way of profits in working part No. 2 of appellant's mine, they should find for appellant. We cannot sustain this contention, as it does not meet our view of the law. However, instruction No. 4 given by the trial court, to which reference was earlier made in the opinion, practically conforms to the theory of appellant's counsel as to the measure of damages, of which instruction appellant cannot complain, as it was highly prejudicial to appellees.

"In our opinion the pleadings and proof in this case show it to be one in which profits are recoverable."

And, in support of the conclusion there reached, the court cited, with approval, the Pottinger case, and Blood v. Herring, above referred to.

In Hauser, Brenner & Fath Co. v. Tate & Co., 105 Ky., 701, appellees agreed to furnish 150,000 quarter barrel staves at $32 per thousand, and 100,000 half barrel staves at $46 per thousand to appellants, but after 125,000 staves had been delivered, appellants broke the contract by refusing to receive any more staves thereunder; whereupon appellees brought suit to recover damages for breach of the contract, laying their damages at $11.40 per thousand staves. Tate & Co. re-

covered $1,600 damages, and from that judgment the Hauser company appealed, one of the grounds of appeal being that the court had erred in allowing Tate & Co. to prove the profits they might have made on the staves if they had been permitted to ship them. In affirming the judgment, however, the court, after citing the Pottinger case, said:

"The general rule is that the measure of damages for breach of an executory contract includes loss of profits which grow out of the contract, and which would have been realized from its full performance, but not the loss of profits or other damages arising out of collateral undertakings entered into on the faith of the contract. It seems to us that the instruction given in this case lays down the true and correct measure for determining the amount appellee was entitled to recover, and the instructions fully and fairly submit the case on appellant's counterclaim."

Thompson v. Jackson, Owsley & Co., 14 B. M., 92, is an instructive case upon this subject. We there held that on a failure to comply with a contract to deliver 800 hogs, to be slaughtered between specific periods, and the plaintiff having shown his readiness to slaughter them according to his undertaking, the criterion of damages was the net profit of slaughtering the hogs over the expense and trouble of slaughtering them at the customary prices.

The distinction between breaches of contract for personal services and contracts of a general character was recognized in Devers v. May, 124 Ky., 394, where, after having said the measure of damages for the breach of a contract by a lessor of a farm for failing to place and keep the lessee in possession according to the terms of the lease, was the difference between the agreed rent and the actual rental value of the farm plus any special damages that the lessee may have sustained, we further said:

"Nor is it necessary to entitle the lessee to recover general or special damages that he should allege or prove any effort upon his part to rent other land, or to engage in other occupations, because the recovery is not sought on account of loss of time or services, but as damages for the breach of a distinct contract for the use and possession of specific property."

See, also, Smith v. Perry, 13 Ky. L. R., 683; Goodrich v. Hubbard, 51 Mich., 62; Wells v. Nat. Life As.,

39, C. C. A., 476; 99 Fed., 222; 52 L. R. A., 33; U. S. v. Behan, 110 U. S., 338.

Moreover, when the petition aptly set forth the contract and its breach, it stated a cause of action, although it might have estimated the damages under an erroneous rule as to the measure of damages, since nominal damages are always recoverable for a breach of contract, even though no actual damages be shown. Moore v. Linneman, 143 Ky., 233.

In the case at bar, however, the 'petition not only stated a cause of action, but rested the measure of damage upon a sound rule of law.

Judgment reversed, and action remanded for further proceedings.