[No. 194. Decided December 8, 1891.]

W. F. WATSON, *Respondent*, v. GRAY'S HARBOR BRICK COMPANY, *Appellant*.

APPEAL—ASSIGNMENT OF ERRORS—DAMAGES—BREACH OF CONTRACT—
PROFITS—EXPENSES INCURRED.

Under the provisions of the appeal act of March 22, 1890, it is sufficient, without making a formal assignment of errors, to specify the errors in appellant's motion for a new trial, and cite them in its brief.

In an action for breach of contract for driving a well, the expense incurred by plaintiff in preparing for the work is not a proper element of damages.

In such a case the proper measure of damages is the profit plaintiff might have made out of the contract if its completion had not been prevented by defendant.

In an action upon such a contract, defendant cannot show, for the purpose of reducing damages, what profits plaintiff made on other contracts, or under other employment, during the period that he might have been engaged under the contract sued on.

*Appeal from Superior Court, Chehalis County.*

Action by W. F. Watson against the Gray's Harbor Brick Company for breach of contract. The facts are sufficiently stated in the opinion.

*Bignold & Stinson*, for appellant.

·  *Hodgdon & Burlew, G. J. Moody*, and *B. F. Jacobs*, for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This action was brought on an alleged violation of a written contract made by the plaintiff and one Hamshaw, whom plaintiff claims to be a general agent of defendant, and as such manager had the authority to bind the defendant by his contract. The contract was signed, "The Gray's Harbor Brick Company, by F. T. Hamshaw, manager."

The respondent moves the court to dismiss the said appeal, and affirm the judgment rendered in the court below, for the reason that there is no assignment of errors. The appellant, however, specified the errors in its motion for a new trial, and cites them in its brief, though not in a very formal way. This appeal was taken before the law of 1891 went into effect, and under the provisions of the law then in force, we think, is sufficient, and the motion to dismiss will be denied.

Under the contract, the plaintiff agreed to sink a well for defendant, for which service defendant agreed to pay a stipulated price per foot. Plaintiff alleges that in view of

the fulfilling of his contract, he shipped his plant from Walla Walla to Hoquiam at great expense, to wit, $225, and was ready and willing to perform his part of the contract; but was prevented by defendant from entering upon the work under the contract; and by reason of refusal of the defendant to carry out the work he is damaged in the said sum of $225, expense of moving his machinery; in the sum of $300, in the loss of profits that would accrue to him from the performance of the contract, and $75 loss of time in making preparation to do said work. The defendant denied that it entered into the contract with plaintiff at all, and contended on the trail that Hamshaw was not its agent, and had no authority to contract for it. During the progress of the trial there was some testimony showing that plaintiff was engaged in digging wells for other parties during the time that he would have been engaged in working for defendant under the contract, if the terms of the contract had been carried out. After the admission of this testimony the court made the following statement:

"Upon an examination of the contract during the adjournment, we have come to the conclusion that this contract is not revokable at the will of the defendant; that under its provisions there is an express agreement that he shall sink at least one well to a depth not to exceed 500 feet. The allegations of the complaint being that the contract was abrogated by the defendant before he had commenced any operations on the sinking of the well, it would constitute a breach of the contract, if proven. The measure of damages, in that instance, is the amount of expense necessarily incurred by the plaintiff in preparing for the work, and a reasonable allowance for his time in so doing, not exceeding the amount claimed in his complaint."

Whereupon the plaintiff moved to strike out all that part of the testimony of Mr. Watson which did not relate to the expense incurred by him in bringing his machinery and expert workmen from Walla Walla to Gray's Harbor,

and other expense incurred by him at Gray's Harbor, including his own time and personal expenses in preparing to perform the contract. This was an exclusion of the testimony tending to show that the plaintiff received continuously a lucrative employment, out of which he realized profit, on his arrival at the place where this contract was to be performed; which motion was sustained by the court and objected to by the defendant. Afterward the court instructed the jury as follows:

Instruction 8: "If you believe, then, that the company was bound by the contract in the manner as stated in the foregoing instructions, and that the plaintiff made preparation to do the work, and was then prohibited from doing it by the company, they would be liable to him for his expenses and reasonable compensation for his time lost, not exceeding the amount claimed in his complaint."

To which instruction the defendant excepted.

While the measure of damages seems largely to have been the bone of contention at the trial, no authorities are cited by either appellant or respondent on that question. We think there was no error committed by the court in excluding the testimony referred to above. We do not question the general rule that plaintiff cannot recover for avoidable consequences. This is a natural sequence of the principle which confines the damages to direct and immediate consequences, and can be pleaded when the nature of the case will permit; for it is not the policy of the law to permit a man to aggravate his damages by his own neglectful acts. As, for instance, it has been held that where a man's fence has been knocked down and his crops exposed to the ravages of cattle, that it was his duty to repair the fence as soon as it came to his notice, and that he could not recover damages that were incurred after that time. This rule is made especially applicable to actions by employés to recover for personal services where they have been dismissed by their employers without sufficient cause,

and prevented from completing the services according to the contract. They must seek other employment, and the amount which they earn in this way, or which they might have earned had they made reasonable exertions, will be allowed in reduction of the damages given by their discharge. Sedgwick on Damages, § 206. There is a well defined distinction drawn by all the authorities between contracts for hire, or for personal services, and the contract to do a specific act. In the former case, if the plaintiff gets employment at the same wages, it is plain that he is not damaged, and when he does not his damages are easily ascertained. In the latter species of contract, where the employer refuses to accept of the services, or to have the work contracted for performed, or prevents the employé from performing the same in any manner, the usual measure of damages, where the contract relates to the manufacture of an article, or the construction of a building, or the performance of some other specified act, is the difference between the price agreed to be paid and what it would have cost the employe to complete it, provided such cost would be less than the contract price. Field on Law of Damages, § 339. The duty to seek employment is dependent upon the original contract being one of employment or hire. It is not applicable to every contract. Sedwick on Damages, § 208. It was held by the supreme court of Pennsylvania, in *Wolf v. Studebaker*, 65 Pa. St. 459, a leading case decided in 1870, that ordinary contracts of hire, and contracts for the performance of some specified undertaking, cannot be governed by the same rule. That in one case the party can earn no more than the wages, and if he gets that his loss will be but nominal, whereas, in the other case, the loss of the property is the loss of the benefit of the contract. The damage may be said to be fixed by the law of the contract the moment it is broken, and cannot be altered by collateral circumstances independent of and totally discon-

nected from it, and from the party occasioning it. To plead the doctrine of avoidable consequences to such case, said the court, " would necessarily involve proof of everything, great and small, no matter how various the items done by the plaintiff during the period of the contract might be, and how much he made in the meantime."

The case at bar is a signal instance of attempting to apply such a rule to this kind of a contract; a voluminous mass of evidence was submitted for the digestion of the jury concerning other contracts performed by this plaintiff; how much profit he made out of this contract, and how much loss he sustained in that; the condition under which he labored in other contracts, compared with the condition under which he would have labored in the performance of the contract sued on; the respective conditions of the soil in different locations, as to the relative amount of clay, gravel, sand, etc.; showing conclusively that it was an introduction of an impracticable element of proof, and had no approximate relation to the contract itself. If the rule was to be observed that the damages proven must be direct and approximate, the same rule must be invoked in the reduction of damages. Mr. Sedgwick says that "while the rule is of very general application, the circumstances of many contracts forbid its application." This, we think, is one of those cases. The distinction between contracts for piece work and time contracts, according to the phraseology of Mr. Greanleaf, is recognized by that author in his work on Evidence, vol. 2 (14th ed)., § 261a. Prevention by the employer gives the right to damages for loss of the profits.

" The profits which are permitted to be recovered are those which are the direct and immediate fruits of the contract. These are part and parcel of the contract itself, entering into and constituting a portion of its very elements, something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfillment of any

other stipulation.  They are presumed to have been taken into consideration and deliberated upon before the contract was made, and formed, perhaps, the only inducement to the arrangement.  In an action upon the contract against the employer for preventing the complete performance, the contractor is entitled to recover the contract price for the work actually done, and, in the absence of other damages, the difference between the contract price and what it would cost to perform the contract as to the residue." 2. Sutherland on Damages, p. 522.

In *Myers v. York & Cumberland R. R. Co.*, 2. Curt. 28, it is held that in an action of covenant, the plaintiff having been wrongfully prevented by the defendant from completing the work, the measure of damages is the difference between the price agreed to be paid for the work and what it would have cost the plaintiff to complete it.  When one contracts to perform work for another at a stipulated price, and is prevented by him from entering upon the performance, the measure of damages is the difference between the cost of performing the work by the party agreeing to do it and the price agreed to be paid for it; or, in other words, the profits the party would have received.  *George v. Cahawba, et .. R. R. Co.*, 8 Ala. 234.  This was a special contract between plaintiff and defendant by which he was to perform certain work and labor on the road for certain compensation to be paid him.  To the same effect is *Richmond v. Dubuque & Sioux City R. R. Co.*, 26 Iowa, 191.  In fact, we think that in contracts of this kind the rule of profits is thoroughly established, and as said by the supreme court of the United States, in *Philadelphia, etc., R. R. Co. v. Howard*, 13 How. 344, that "wherever profits are spoken of as not a subject of damages, it will be found that something contingent upon future bargains, speculations or states of the market are referred to, and not the difference between the agreed price of something contracted for and its ascertainable value or cost."  In this case the jury evidently acted under

19—3 WASH.

instruction "eight" of the court, and based the damages on the expense incurred by the plaintiff in preparing for the work, which we think was not a proper measure of damages. The element of profit was not submitted to them, and we have no way of knowing whether they would have found for the plaintiff on that question or not. For this reason the judgment must be reversed. The question of authority of the agent, and ratification by the principal, was submitted to the jury, and as the evidence seemed to disclose a case, which lies close to the border line, the jury depending upon the credibility of witnesses, and the local understanding, we would hardly feel justified in disturbing their verdict on that question for the errors mentioned.

The judgment is reversed and the cause remanded.

ANDERS, C. J., and STILES, SCOTT and HOYT, JJ., concur.