[No. 22503. Department Two. June 22, 1931.]

RICHARD D. SURYAN, *Respondent*, v. LAKE WASHINGTON SHIPYARDS, *Appellant*.[1]

[1]Reported in 300 Pac. 941.

*Kerr & McCord,* for plaintiff.

*Bogle, Bogle & Gates, Claude E. Wakefield,* and *H. C. Barney,* for defendant.

BEELER, J.—On February 21, 1928, the parties to this suit entered into a written contract whereby the defendant agreed to build a purse seine fishing boat for the plaintiff, named "Lindberg", which defendant's officers knew was to be used for fishing in Alaskan waters. The defendant completed and delivered the boat on May 23, 1928, and within about one week thereafter the plaintiff proceeded to Alaska. On June 12, 1928, the plaintiff engaged in fishing at Steamboat Bay in the waters of Alaska, and, after having about nine hundred barrels of herring on board, the "Lindberg" started to a nearby cannery, and, while so doing, the boat took on a great deal of water and swamped, and

was saved from sinking by the plaintiff throwing overboard three hundred barrels of said herring, and by the timely arrival and aid given by the ''Stanford'', another fishing boat, which rendered meritorious salvage services and kept the ''Lindberg'' afloat and towed it into port, where temporary repairs were made on June 13 and 14.

The plaintiff brought this action to recover various items of damage which, he alleged, he had sustained because the boat was improperly constructed. The defendant in its answer denied the allegations of faulty construction, and, by way of counterclaim, alleged that, while building the boat, the plaintiff had ordered certain extras and additions of the reasonable value of $1,434.50, on which there was a balance due of $1,009.53.

The trial court found that the boat was not staunch, tight, or seaworthy, but was of faulty and improper construction, in that green instead of seasoned lumber had been used, and that the caulking was generally insufficient, thereby rendering the boat unfit for herring fishing in Alaskan waters; that such faulty and improper construction was unknown to the plaintiff at the time the boat was delivered, and could not by the use of due diligence and inspection have been ascertained or discovered by him.

The parties are in dispute over six items. Some of these items were allowed by the trial court, some allowed in part only, and one item entirely disallowed. The court awarded plaintiff damages on four items. On item 1, $412 for loss of profits on eight hundred barrels of herring, which the trial court found the plaintiff could reasonably have caught on June 13 and 14 while the boat was undergoing repairs. On item 2, $154.50 loss on the three hundred barrels of herring which the plaintiff was compelled to throw overboard

at the time the "Lindberg" swamped. On item 3, $1,200 salvage paid to the "Stanford." On item 4, $481.90 general damages allowed plaintiff for depreciation in the value of the boat. On item 5, the court disallowed plaintiff's claim for salvage charges in the sum of $200 which, he maintains, he incurred in having his seine rescued. On item 6, the court allowed the defendant $1,434.53 for extras in the construction of the boat.

The defendant has appealed from the judgment awarding damages to the plaintiff on items 1 to 3, inclusive, and the plaintiff has cross-appealed from the judgment disposing of items 4 to 6, inclusive, in the manner above indicated.

The defendant admits there was an implied warranty that the boat would be fit for the use for which it was constructed, but contends that the plaintiff cannot recover, because he failed to give notice of the defects within a reasonable time after discovery, as required by the uniform sales act. Section 5836-49, Rem. 1927 Sup., provides:

"In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

The buyer, in order to preserve his rights after acceptance where there is an implied warranty, must give the seller notice of the defect or defects within a reasonable time after discovery. What constitutes a reasonable time is a question of fact, depending upon the circumstances of each case. On June 12, 1928, at

the time the leakage occurred, the boat was towed into port, where temporary repairs were made. With the aid of the temporary repairs, the plaintiff was able to use the fishing boat throughout the fishing season. On August 14, 1928, while fishing was still in progress, the plaintiff, in answer to a request for payment on account of the balance due for the construction of the boat, sent a telegram which reads as follows:

"SORRY CAN NOT HELP OUT NOW FISHING VERY POOR HARDLY MAKING EXPENSES STOP DO NOT THINK ADDITIONAL CHARGES FAIR AS PART OF STERN OF BOAT WAS NOT CAULKED AND WE ALMOST LOST BOAT AND LIVES WITH A LOAD."

After the fishing season closed, the boat was brought to its home port and a survey made. Thereupon, on October 20, 1928, the following letter was sent by plaintiff to defendant:

"On examination of the boat built by you for me under said contract it was found that none of the seams above the guards had been caulked at all although the same were filled with putty and painted. It was through those uncaulked seams that the boat took water as above stated and on account of your failure to caulk said seams I have been to an actual damage of about $5,000, and I will look to you to reimburse me for actual damages sustained. This damage does not include $1,200 salvage claim of the Stanford which claim I understand has been allowed by the insurance company.

"I will further state that caulking below the guard is not put in in a workmanlike manner and I am informed that the whole boat will have to be recaulked."

The telegram of August 14 brought knowledge to the officers of the defendant company of the defective construction of the boat. Such knowledge was again brought to their attention by the letter of October 20. Furthermore, this is not a case of one selling an article which had been manufactured or produced by another.

Here, the defendant built the boat. Therefore, its officers knew or should have known that the boat as constructed might prove unseaworthy. Under all the circumstances, we hold that the notice as given was within a reasonable time and was sufficient.

■ ■ The defendant next contends that the trial court erred in the allowance of damages on items 1 to 3, inclusive. These three items of damage resulted by reason of the defendant's breach of the implied warranty. We have frequently laid down the rule that all damages are recoverable that can be said to have been reasonably within the contemplation of the parties at the time the contract was entered into, as a probable result in case of a breach. In the case of *Martinac v. Bakovic*, 158 Wash. 193, 290 Pac. 847, we said:

"Where two parties make a contract which one of them breaches, the damages to which the other party is entitled by reason of such breach are such as may reasonably be considered as arising according to the usual course of things from such breach, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of a breach of the agreement."

The defendant knew that the boat which it constructed for the plaintiff was intended for use as a fishing boat in Alaskan waters during the herring season of 1928; knew that the fishing season for herring in those waters was limited, and must have contemplated that, if the boat proved unseaworthy through its faulty construction, it might become necessary, when stress of weather arose, to jettison the cargo and seek aid, in order to save the lives of the crew and bring the helpless boat into port. So far as concerns the allowance for loss of profits during the time the boat was laid up for necessary repairs, as awarded by the trial

court on item 1, it is sufficient to say that this court is committed to the doctrine that, in such a case as this, prospective profits may be the basis of recovery if they can be estimated with reasonable certainty. *Florence Fish Co. v. Everett Packing Co.*, 111 Wash. 1, 188 Pac. 792; *Warner v. Channell Chemical Co.*, 121 Wash. 237, 208 Pac. 1104; *Goldstein v. Carter*, 157 Wash. 405, 288 Pac. 1063; *Watson v. Grays Harbor Brick Co.*, 3 Wash. 283, 28 Pac. 527.

In the *Florence Fish Company* case, *supra,* we said:

"As the measure of its damages, the court permitted the respondent to show the number of fish caught on the days when it had the assistance of the stand-by boat, and the number caught on the days when no such assistance was furnished, and permitted, also, the captain of the fishing boat and the members of the crew to give estimates as to the difference between the number of fish that could have been caught with the aid of the assisting boat and the number actually caught. Against this, the appellant makes two contentions, the first of which is that the measure of damages is not the loss in catch but what it would cost to have procured an assisting boat; and the second, that the testimony is at best but speculative and intangible.

"But, contrary to the first branch of the contention, we think the measure of damages is the loss in catch.
. . .
"On the second branch of the objection, certainly the differences in the number of the catch on the days when it had the assisting boat and the days when it did not, furnished a very tangible basis upon which to estimate the actual loss. Nor was it error to permit those actually engaged in the work and who knew the conditions to give an estimate of such loss."

In the instant case it appears that, during the two days the "Lindberg" was laid up for repairs, the herring were running in Steamboat Bay, and that the boats engaged in fishing there were securing capacity loads. The capacity of the "Lindberg" was approxi-

mately nine hundred fifty barrels. From this evidence, the trial court found that the plaintiff had lost in catch on those two days eight hundred barrels, and we are not disposed to disturb this finding.

Item 2 is amply supported by the evidence, and the award as made by the trial court we find to be correct.

■ Item 3 refers to the payment of $1,200 to the "Stanford." The "Lindberg" was valued at $26,000. It is quite apparent that, had the "Stanford" not given timely and meritorious services, the "Lindberg" in all probability would have foundered. Considering the value of the property saved, the risk and danger incurred by the salvors, we conclude that the award was indeed very conservative and fair under all the attendant circumstances.

■ Now, as to the cross-appeal. Plaintiff contends that the trial court erred in allowing as general damages merely the sum of $481.90, and argues that the allowance was too small, and should be materially increased. With this contention we are in full accord. In *Ekstrand v. Barth,* 41 Wash. 321, 83 Pac. 305, this court, quoting from 13 Cyc. 158, lays down the following rule governing the measure of damages in cases of this character:

"Where a contract has been defectively performed and damages are claimed for such reason, the damages should be measured by the difference between the value of the property in its defective condition and its value if it had been completed in compliance with the contract; . . ."

A number of witnesses who qualified as experts testified that the difference between the boat contracted for and the boat delivered, due to the defective construction by the defendant, was from $2,500 to $4,000. This evidence was not contradicted. The amount of

the award made by the trial court, $481.90, represents the repair bill in making the necessary changes and alterations of the boat so as to make it seaworthy. This, however, fails to take into account the fact that the boat was built of green lumber, a condition which the expert witnesses testified can never be remedied; and further fails to take into consideration the fact that the boat as repaired was not as originally built or designed. Therefore, we conclude that the award for general damages should be increased to the sum of $2,500.

The lower court disallowed damages on item 5. It appears that the plaintiff paid the sum of $200 to the salvors for rescuing his fishing seine, valued at $3,000, which was thrown overboard when the "Lindberg," due to its faulty construction, was saved from foundering. Like the jettison of the cargo and salvage of the boat, this item of damage must reasonably be supposed to have been in the contemplation of the parties at the time the contract was made, as one of the probable results in the event of a breach of the agreement. It took the salvors, five or six in number, an hour and twenty minutes to rescue the seine out in the open sea. This was a meritorious service. Had the seine been completely lost, the defendant would have been liable for its reasonable value. Clearly, this item of damage should have been allowed.

The trial court allowed the defendant on its counterclaim the sum of $1,434.53 for extras ordered by the plaintiff during the time the boat was in process of construction. We find no error in the allowance of this item.

The judgment of the lower court is modified in the following particulars: First, the amount of general damage awarded to the plaintiff on item 4 is increased from $481.90 to $2,500. Second, the plaintiff is awarded

the sum of $200 on item 5. In all other respects, the judgment appealed from is affirmed.

TOLMAN, C. J., MILLARD, FULLERTON, and BEALS, JJ., concur.