MARCUS & CO., INC., A BODY CORPORATE, PLAINTIFF-APPELLANT, v. K. L. G. BAKING CO., INC., LIKEWISE A BODY CORPORATE, DEFENDANT-RESPONDENT.

Argued October 20, 1938—Decided January 13, 1939.

For the appellant, *Marcus & Levy* (*Louis Santorf,* of counsel).

For the respondent, *Kimmel & Kimmel* (*David Kimmel* and *Martin Kimmel,* of counsel).

The opinion of the court was delivered by

HEHER, J. Plaintiff sued to recover damages for the alleged breach of a contract (the date of the asserted contractual undertaking is not specified) for the sale and delivery by defendant to it of "four Used Rotary Baking Ovens * * * on or before May 15th, 1937."

It was pleaded that the delivery "date" thus "designated was agreed to be of the essence of the contract for the benefit and advantage of both parties, in that, first, the defendant was in the process of erecting a new baking oven and required the space occupied by those sold to plaintiff, and in that, second, plaintiff, in reliance upon defendant's agreement to deliver by such date, was about to and in the process of reselling at a profit to a third party for delivery immediately thereafter, of which facts said plaintiff and said defendant apprised each other;" that delivery was not made until July 24th, 1937, and that, in consequence thereof, plaintiff defaulted in the performance of a resale contract made with the third party, and thereby suffered special damages—*i. e.*, loss of profits on the resale contract, moneys paid by way of settlement of a claim for damages made thereunder, expenses incurred in effecting adjustment of the claim, loss of "good will and future business of said customer," and the like.

Defendant interposed, by way of answer, a general denial of these allegations, and counter-claimed for the price of four used Fish rotary ovens sold and delivered by it to plaintiff "between and including April 7th, 1937, and July 24th, 1937." Plaintiff's answer to the counter-claim was a general denial of the averments so made.

Judge Wolber nonsuited the plaintiff, and submitted to the jury the factual issues arising from the evidence adduced on the counter-claim and answer. There was a verdict for defendant. Plaintiff appeals from the consequent judgment.

The nonsuit is now assigned for error.

This is the history of the transaction as disclosed by the evidence.

Plaintiff was a dealer in "bakery machinery, ovens, and equipment," at the city of Paterson, in this state. Defendant,

on the other hand, was exclusively a baking concern. Its manufacturing plant was located in Long Island City, in the State of New York. It had contracted with another for the installation of new ovens in its plant; and the old ovens were to be continued in use until the new were installed. Under the belief that the installation of the new equipment would be completed on May 15th, 1937, or shortly thereafter, defendant, on the prior March 30th, advised plaintiff by letter that it had for sale "16 foot Fish Rotary Ovens, * * * in very good condition, in operation every day, * * * available on or about May 15th, possibly sooner," and asked to be informed whether plaintiff would be "interested." On the ensuing April 7th, one of plaintiff's officers journeyed to defendant's plant and entered into negotiations for the purchase of the equipment. An agreement was reached; and defendant undertook to reduce the terms to writing in the form of the following confirmatory letter dispatched to plaintiff that day:

"This letter will confirm our conversation of to-day, that you have purchased Two (2) sixteen foot Fish Rotary Ovens equipped with Grant Oil Burners, for the sum of Eight Hundred Dollars ($800.00). These Ovens are now located at this address, 21-30—44th Avenue, Long Island City, New York. The following has been agreed upon by both parties concerned:—Upon three days' advance notice, you will have your men dismantle and remove same from our premises. That you will require One and One Half (1½) working days per oven to complete this work. That you will forward us your check for One Hundred Dollars ($100.00) by return mail as a deposit on these Ovens."

There was no dissent from this statement of terms. Plaintiff deferred its reply until April 30th ensuing, when it forwarded by letter a check for $100, "as deposit on our purchase of Two (2) sixteen foot Fish Rotary Ovens * * * for the sum of $800, balance to be paid on arrival." This inquiry was made: "Will you kindly * * * give us an idea when you expect us to dismantle these Ovens as we will be ready upon receipt of 5 days' notice in advance." On the following

day, defendant acknowledged receipt of this communication and the enclosed deposit, and, in reply to the request for information as to the date of delivery, said: "We expect to advise you shortly, just when the ovens will be available to you."

On the ensuing May 5th, an agreement was reached, by telephone, for the sale of two additional ovens at the same price. Again, defendant forwarded to plaintiff a letter confirming the sale of "Two (2) Sixteen foot Fish Rotary Ovens * * * for the sum of $800.00" upon the identical terms and conditions outlined in the prior letter of April 7th, and requesting a deposit of $100. On the following day, plaintiff mailed a check for the requested deposit; and defendant made immediate acknowledgment of the receipt thereof.

One oven was delivered and accepted on June 4th, 1937; a second on the following July 10th; and the remaining two on or about July 24th. There was delay in the installation of the new ovens at defendant's bakery, due to strikes and "labor troubles" at the plant of the manufacturer—matters beyond the control of defendant.

Plaintiff relies upon an "oral contract" for the sale and delivery of four ovens on a day certain, May 15th, 1937, with time of the essence of the contract. It introduced—subject to a ruling as to its admissibility when all the evidence was in, although it disputes the sufficiency of the objection—parol evidence of a stipulation for such delivery; and the question arises whether the writings reveal an intention and purpose to make the confirmatory letters of April 7th and May 5th the sole repositories of the terms of the respective contracts so made. The principle is invoked that, where a contract of sale, such as these, specifies no time for delivery of the merchandise sold, the law implies an obligation to make delivery within a reasonable time, and "will not permit this implication to be rebutted by extrinsic evidence going to fix a definite term because this varies the contract,"—citing *Cameron Coal and Mercantile Co.* v. *Block, 26 Okla.* 615; 110 *Pac. Rep.* 720; 31 *L. R. A.* (*N. S.*) 618; *2 Pars. Cont.* 535; 22 *C. J.* 1118; 10 *R. C. L.* 1047.

But the inquiry, in the final analysis, is whether the common intent to make the particular writing the exclusive memorial of the parties' contractual undertakings is unmistakably revealed by the document itself. Only in that case, it is the settled rule in this state, is the writing indisputable as regards the terms of the contract. *Naumberg* v. *Young,* 44 *N. J. L.* 331; *Grueber Engineering Co.* v. *Waldron,* 71 *Id.* 597; *Shinn* v. *Black,* 97 *Id.* 219; *Corn Exchange Bank* v. *Taubel,* 113 *Id.* 605; *Downs* v. *Jersey Central Power and Light Co.,* 117 *Id.* 138. Such an intention is not exhibited by a writing incomplete on its face.

While the law presumes that, in the absence of a specification of time in the contract, the parties intended that delivery of the subject of sale should be made within a reasonable time, the question remains whether a writing entirely lacking in this particular is to be regarded as an integration of the contract, so as to bar parol evidence of an unexpressed stipulation for delivery at a given time. It would seem that, in this regard, there is an essential difference between matter covered by plain implication of fact and such as is the subject of an implication of law in the absence of express agreement. In the former case, extrinsic evidence of an agreement at variance with the implication is plainly inadmissible, while in the latter case such evidence has been accepted, on the theory that the written memorial does not purport to be complete upon its face and the extrinsic evidence does not therefore serve to vary or contradict it. This distinction was made by this court in *Stephens-Adamson Manufacturing Co.* v. *Bigelow & Swain,* 84 *N. J. L.* 585; *affirmed,* 86 *Id.* 707. See, also, *Williston on Contracts (Rev. Ed.),* § 640; *A. L. I. Contracts,* § 240.

Here, the only provision relating to delivery embodied in the confirmatory letters, if they be regarded as having the attribute of finality of utterance, enjoined plaintiff to "dismantle and remove" the equipment "upon three days' advance notice" given by defendant; and the dispositive question on that hypothesis is whether this provision is so far an expression of the common intent with respect to the time of delivery

as to bar the introduction of extrinsic evidence of an agreement for delivery on a day certain, with time of the essence of the contract. And does it have this effect in view of the statement contained in defendant's letter of March 30th, that the equipment would be ready for delivery "on or about May 15th, possibly sooner?" In other words, did the confirmatory letters integrate the transactions treated therein? In the view we take of the case, there is no occasion to consider these points. For a reason to be presently stated, the nonsuit was justified; and it is therefore unnecessary to pursue the inquiry.

There was no evidence of the making of either contract under peculiar circumstances entitling plaintiff to the special damages claimed to have ensued from the breach pleaded. Concededly, plaintiff did not, at the time of the making of either contract, have an existing subcontract for the resale of the equipment so sold. The ovens comprising the subject-matter of the first contract of April 7th were purchased for resale in the usual course of plaintiff's trade—when a sale on satisfactory terms could be effected. While plaintiff's agent testified that, in the negotiations which preceded the making of the second contract of May 5th, he informed defendant that plaintiff "wanted" the additional ovens "for immediate delivery," and that the prospective purchaser "wanted them for May 15th," he acknowledged that he did not disclose the true situation, as regards the likelihood of an immediate resale, for fear that defendant "would ask twice as much" for the equipment.

The general rule for the admeasurement of damages consequent upon a breach of contract is the loss directly and naturally ensuing from the breach in the ordinary course of events. The party guilty of the breach is liable only for the losses reasonably foreseeable, at the time of the making of the contract, as the probable result of the breach. To borrow the language of Alderson, B., in the leading English case of *Hadley* v. *Baxendale,* 9 *Exch.* 341, the damages recoverable for a breach of contract are limited to such as may "reasonably be supposed to have been in the contemplation of both

parties at the time they made the contract as the probably result of the breach of it."

And so the seller of goods is under a duty to respond in damages for such losses as would probably result in the ordinary course of things from a breach of the contract under the special circumstances known to the parties at the time it was made. Such are ordinarily considered by the law as reasonably within the contemplation of both parties to the contract. Where the special circumstances are not known to the party chargeable with the breach, the law deems—again drawing from the opinion of Baron Alderson—that he "had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract," and his liability is measured accordingly. *Hadley* v. *Baxendale, supra; Pope* v. *Ferguson,* 82 *N. J. L.* 566; *Holland* v. *Jones-Howe Co.,* 98 *Id.* 787; *Weiss* v. *Revenue Building and Loan Association,* 116 *Id.* 208; *Globe Refining Co.* v. *Landa Cotton Oil Co.,* 190 *U. S.* 540; *23 S. Ct.* 754; *47 L. Ed.* 1171; *Willison on Contracts (Rev. Ed.)* §§ 1347, 1355, *et seq*

As regards special injury suffered through the inability of the buyer, consequent upon the seller's breach, to perform a subcontract of sale made with another, this court, in a deliverance by Chief Justice Gummere in *Pope* v. *Ferguson, supra,* said: "If at the time of the sale the existence of a subcontract is not made known to the seller, a knowledge on his part that the buyer is purchasing with a general intention to resell, or notice of a subcontract, given to him subsequent to the date of the contract, will not render him liable for the buyer's loss of profits on such subcontract." In such cases, the special injury likely to ensue from a breach of the buyer's subcontract, through the seller's non-delivery of the goods sold, was not within the contemplation of the seller as the probable consequence of his breach of the principal contract, and he is therefore not under a duty to make recompense therefor.

And it would seem that where (as plaintiff asserts was the case when the second contract of May 5th was made) the

probability of an immediate resale was in the contemplation of the seller, he is liable for the natural consequences of a breach under such special circumstances. But, in that event, it·is requisite, to render the seller liable for such special damages as are here claimed to have resulted from the buyer's inability to perform his subcontract, that the seller knew, at the time of the making of the principal contract, that goods of like kind could not be procured elsewhere by the buyer for the performance of his subcontract, and that therefore the injury thus resulting was within the contemplation of the parties as the probable consequence of a breach of the principal contract. *Williston on Contracts (Rev. Ed.)*, § 1347; *A. L. I. Contracts*, § 330; *Globe Refining Co.* v. *Landa Cotton Oil Co., supra; Czarnikow-Rionda Co.* v. *Federal Sugar Refining Co.*, 255 *N. Y.* 33; 173 *N. E. Rep.* 913; 88 *A. L. R.* 1426.

There is nothing to suggest that the parties here contemplated inability of the buyer to obtain equipment elsewhere for the performance of such resale contract as it might make; rather the contrary. Defendant was a mere baker, unfamiliar with the equipment market; and plaintiff, although conversant with the trade conditions, did not, at or prior to the making of either contract, communicate to defendant the utter lack of such a market—if such was the case—for the fulfillment of its prospective subcontract, if. defendant should default in the performance of the principal contract; and so the special damage claimed to have been sustained was not within the contemplation of the parties as the likely consequence of the breach of contract pleaded. Indeed, plaintiff, in the early part of June, 1937, looked to "the open market" for ovens, but found there was not "an available market for the purchase of Fish sixteen-foot rotary owens." In this connection, it is worthy of note that, while the contracts in suit provided for the sale of *sixteen*-foot ovens, and for delivery on May 15th, if plaintiff's version of the transaction be adopted, the resale contract (dated May 5th) obligated plaintiff to make "immediate delivery" of three *eighteen*-foot ovens.

This principle is implicit in section 67 of the Uniform Sales act of 1907 (4 *Comp. Stat.* 1910, *p.* 4663; *R. S.* 1937, 46:30-73), providing that, where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered. This section follows section 51 of the English act, and seems to conform to the common law rule. *Cruthers* v. *Donahue,* 85 *Conn.* 629; 84 *Atl. Rep.* 322; *Bartolotta* v. *Calvo,* 112 *Conn.* 385; 152 *Atl. Rep.* 306; 1 *U. L. A.* 370 et seq. It is the principle generally applied. *Williston on Contracts (Rev. Ed.),* § 1347. And if the spirit of the Uniform Sales act is to be served, uniformity of interpretation is required.

Whether it be regarded as founded in the common consent of the parties, or as *quasi*-contractual in nature, it is an obligation imposed by the law on the guilty party to answer in damages for the reasonably foreseeable consequences of his breach. He is not justly chargeable with a greater liability than was contemplated by the parties; for, in a case such as this, it is his undoubted right, by express provision, to alter the standard for the admeasurement of damages in the event of a breach, *i. e.,* to stipulate for an enlargement or curtailment of the liability thus imposed, or even for liquidated damages, regardless of the loss actually suffered. *Globe Refining Co.* v. *Landa Cotton Oil Co., supra.*

The rule that, ordinarily, the buyer is entitled to nominal damages for the seller's breach of the contract, even though there be no evidence of actual injury, is not applicable here. The action was brought to recover enumerated special damages only; and there was a want of evidence to sustain the cause of action so pleaded. The parties deemed this to be the fundamental issue as regards reparation of the claimed injury. The question of the right to nominal damages was not raised below, nor asserted here; and we have therefore considered it unnecessary to determine the questions of the contractual obligation as to time of delivery and its performance *vel non.* This leads to an affirmance of the nonsuit.

The remaining grounds of appeal require no discussion. In the main, they are subsidiary to the principal question determined, and have thereby been disposed of, or relate to matters properly within the discretion of the trial judge, such as the attempt to reframe the issue when the nonsuit was granted, and, in some instances, they concern rulings not excepted to. We have no occasion to deal with any of these categories. As regards all the grounds of appeal not specially considered, the brief submitted by appellant does not meet the requirements of rule 40 of this court. See *McKenna* v. *Reade,* 105 *N. J. L.* 408; *Spalt* v. *Eaton,* 119 *Id.* 343.

The judgment is accordingly affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PORTER, HETFIELD, DEAR, WELLS, RAFFERTY, WALKER, JJ. 13.

*For reversal*—PERSKIE, WOLFSKEIL, JJ. 2.