41 N.J. Super. 178 (1956)
124 A.2d 349
JOHN DeROSE, PLAINTIFF,
v.
HUNTER LINDSAY CORP., A CORPORATION OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided July 23, 1956.
*179 Mr. Carl Casriel, attorney for plaintiff.
Messrs. McGlynn, Weintraub & Stein (Mr. Roger H. McGlynn, appearing), attorneys for defendant.
*180 LARRABEE, J.C.C.
Plaintiff DeRose sued defendant Hunter Lindsay Corporation, contending that he had purchased a diesel engine from the defendant, who represented that the item being sold was a new surplus G.M. marine diesel engine. Also, that there was an implied warranty under R.S. 46:30-21. The engine actually was a used surplus G.M. diesel engine. It lacked certain accessories used in connection with the operation of marine diesels and plaintiff complained that it operated poorly. Plaintiff's case was submitted to the jury which returned a verdict in the sum of $874.73, which corresponds with the amounts shown to be the cost of repairs and loss of profits. Defendant has moved for a new trial.

I.
Defendant contends that the measure of damages is exclusively "the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty." R.S. 46:30-75(7).
However, section 75 of the Sales Act contains paragraph (6) as well as (7). The two should be read together. Paragraph (6) specifies that "the measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty." This is a general rule and it states the measure of damages that are recoverable in all cases of breach of warranty.
Paragraph (6) is followed by (7), as follows:
"(7) In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty."
This is a coordinate rule which is merely complementary of the more general rule expressed in paragraph (6) and is usually but not invariably applicable. Richmond v. Cretens, *181 175 Wis. 297, 185 N.W. 247 (Sup. Ct. 1921); Marcum v. Potter, 148 Tenn. 251, 255 S.W. 47 (Sup. Ct. 1923); Suryan v. Lake Washington, 163 Wash. 164, 300 P. 941 (Sup. Ct. 1931) (cost of salvaging defective boat); Moss v. Yount, 296 Ky. 415, 177 S.W.2d 372, 151 A.L.R. 441 (Ct. App. 1944) (repairs to tractor); Minneapolis Threshing Mach. Co. v. Huncovsky, 52 N.D. 112, 202 N.W. 280 (Sup. Ct. 1924) (repairs to tractor); People's State Bank of Butterfield v. Randby, 158 Minn. 309, 197 N.W. 265 (Sup. Ct. 1924); Oxford Boatyard Co. v. Warman, 192 F.2d 638 (C.C.A. 4th 1951) (repairs to boat).

II.
A perusal of 3 Williston on Sales shows that profits may be included. In fact, paragraph 614, page 371, and 614A, and the 1956 Cumulative Supplement, page 87, shows that the standard urged by the defendant is not exclusive.
The venerated authority of Wolcott v. Mount, 36 N.J.L. 262 (Sup. Ct. 1873), appearing in the case books of some of our better law schools, was a very simple case of breach of warranty of quality in which loss of profits of the beet crop was allowed. Owens v. Anderson, 101 F. Supp. 32 (D.C. Alaska) (profits of tug operation); Suryan v. Lake Washington, supra (profits from fishing).
The jury probably determined that since DeRose repaired the engines and retained them, that his loss was only the cost of repairs because the repairs were effective to make the engines as good as warranted.
If this line of reasoning is adopted, it would be illogical to apply as the measure of damages the difference in value rule because it would permit double recovery, one for the defective condition of the engine and the second for the restoration of it to the condition warranted.
Defendant contends that it was error to submit to the jury proof of loss of profits. The court charged that loss of profits was an element of damages if within the contemplation of the parties. Defendant says this is the rule of *182 Hadley v. Baxendale and applies only to contract cases, not to warranty cases. However, it was used in Wolcott v. Mount.
Defendant further contends that plaintiff's proof of loss of profits lacked certainty. But business profits always fluctuate to a greater or lesser amount, and when the plaintiff can prove a reasonable average over a period of time the evidence may be received.

III.
Defendant complains that plaintiff's witness, Toby Edwards, testified that there was no market for surplus engines at the time of the sale. He testified that the value of the plaintiff's engine at the time of delivery was $1,500. Defendant complains that Edwards testified that he never heard of new surplus engines, and that for him then to testify there was no established market in them was a non sequitur. To this court the statements seem to be consistent.
Defendant contends also that Edwards was offered as an expert and that he was no expert if he had never heard of new surplus engines. But Edwards satisfied the court that he had been engaged with marine engines long enough to be familiar with the situation and to be a competent witness regarding engine values.
Defendant's expert, the defendant and his associates testified how many of these they sold, but there seemed to be no volume of sales elsewhere that would justify the inference that there was an open market for the items.
If there was no open market then the opinion of a dealer who bought and sold engines of the general classification, i.e., marine engines, should be competent.
Further, it should be noted that the statute, R.S. 46:30-75(7), states "the difference between the value of the goods * * *"; it does not state market value, although only three paragraphs removed. R.S. 46:30-73 definitely specifies market value as the measure of damages in a non-delivery case. Inferentially, market value is not the test of *183 R.S. 46:30-75(7). See also Feldman v. Jacob Branfman & Son, 111 N.J.L. 37 (E. & A. 1933).
There are some cases which restrict the proof to market value where there is a market. Marcus & Co. v. K.L.G. Baking Co., 122 N.J.L. 202 (E. & A. 1939) (contract case), but a market value presupposes an open market in which the purchaser could have obtained for a market price the goods he desired to buy. If there is no open market for him to replace the goods by purchase he should be permitted to recover the loss which directly and naturally resulted from the breach.
Defendant contends that the measure of damages is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty. Edwards testified that the engine at the time of delivery was worth $1,500 and the only other evidence of value of the engine, had it answered to the warranty, was the sale price of $2,500, or Lindsay's statement of $2,500 for a new surplus engine or $2,300 for a used surplus engine.
If the jury believed Edwards' statement of delivery value, $1,500, the difference between the delivery value and warranty value, which Lindsay said was $2,500, would be in excess of the verdict. But if they believed Lindsay's statement of value, $2,500, for a used diesel engine and that the item sold was represented to be a used diesel, the delivery value and the warranty value are the same and there is no difference. There were several figures given and the jury could use the testimony to determine the values in their judgment. Further, if the jury believed Edwards statement of value they may have accepted his statement that there are no new surplus marine diesels and so no ascertainable price for them.

IV.
The court refused defendant's request to charge as follows:
"You are hereby charged that if the plaintiff, after acceptance of the said engine failed to give notice to the defendant of the *184 breach of any warranty within a reasonable time after the buyer knew or ought to have known of such breach, then you must find for defendant."
Defendant failed to cite the authority for his request when he submitted it. The court inferred that it was erroneously based on R.S. 46:30-75, but defendant intended it to apply under R.S. 46:30-55 and it was proper under that section. At this point the court desires to comment on the failure of counsel to supplement his requests with citations and to state that every effort will be made to amend R.R. 4:52-1 to require that this be done in the future.
Defendant alleges that several grounds of reversible error resulted from the refusal.
Defendant contends that under the law as expressed in the requested charge it was error to admit some of the repair bills because they were incurred beyond a reasonable time. Defendant cites R.S. 46:30-55, which refers to time of notice, not time of repairs. It may be conceded that there is a limit on the time during which repairs can be made and charged as damages, but this is a matter of remoteness. There seem to be no cases holding that repairs must be made instantly or within a shorter period of time than plaintiff made his. S.G. Young, Inc., v. B & C Distributors Co., 23 N.J. Super. 15 (App. Div. 1952), cited by defendant, holds that plaintiff, in waiting nine months to rescind sale, had not acted promptly and within a reasonable time. It is not a case relating to repairs.
Defendant contends the court erred in adopting a view that only the statute of limitations barred proof of repairs. However, proof of repairs was limited to a few weeks after the sale and reasonably soon after the defects were discovered. They did not extend into the years which would suggest the statute of limitations as a refuge, so it need not be determined whether or not that position was error.
The real problem is this: Did the buyer fail to give notice of the breach of warranty within a reasonable time after the buyer knew or ought to have known of such breach? R.S. 46:30-55.
*185 Failure to charge as requested requires a review of the testimony to determine if there was any evidence to show that the elapsed time was not reasonable.
To determine this problem it is necessary to review the testimony of plaintiff. It was in effect that he went to the seller's place of business in December 1954 and discussed the purchase; that he decided to purchase the engine if he bought a boat; later he bought a boat, went back two weeks later and purchased the engine. The engine was delivered at the end of January or beginning of February 1955 at the Atlantic City Boat Yard of Toby Edwards. Plaintiff noticed parts were missing, and he went to Hunter Lindsay and notified them that the parts were missing; they promised to replace them if he could prove that they came with a new engine. Plaintiff then obtained and showed the seller circulars which indicated that a new engine would include certain parts. Plaintiff said that Hunter-Lindsay's mechanic came down and started the engine in February and that at the time there was a terrific grinding noise in the front and that oil shot out of the pipe. Defendant's mechanic told plaintiff that since it was a new engine it would need to run itself out, so plaintiff ran it a week at the dock and after the week plaintiff went to Hunter-Lindsay and told them about his trouble; they then sent a man down who checked the engine and found that the oil pump gear was worn out. That this happened the middle of February and it was the first notice to plaintiff that the engine was not a new engine. Consequently, he talked with the mechanic and with Burke Lindsay and asked for an explanation, and the mechanic said that the gears had been put on wrong and that was the reason they wore out, but DeRose still had oil and smoke coming out of the stack. In the middle of the third week of March DeRose went to Newark again and complained; only the mechanic was there and he told DeRose to keep the engine running, also to put in new injectors. This partially corrected the trouble, and DeRose ran the boat up to Point Pleasant about March 1, but the oil and smoke continued to come out of the engine and there *186 was no water temperature indicated, so he called Hunter Lindsay the first week in April. Hunter Lindsay sent mechanic John Cosloe down. Cosloe put in thermostats, which had not been in the engine, and fixed the water temperature.
On cross-examination it developed that the engine was installed in February, about two weeks after delivery; that the first knowledge DeRose had that a breach of warranty existed was the missing parts, of which breach DeRose said he gave notice to Hunter Lindsay on the date of delivery, then later in the middle of March the worn gear was taken out of the engine. Further, that he made as many as six visits to East Orange to complain. That he saw Cosloe in East Orange in the third week of March and referred to the injectors.
The proof does not show that plaintiff failed to give notice to the defendant of the breach of any warranty within a reasonable time after he knew or ought to have known of the breach. Since there was no evidence of failure to notify within a reasonable time, the refusal of the charge was not prejudicial error.
The motion is denied.