Carl M. TAUTE, dba Econo-Car of
Billings, Appellant,

v.

ECONO–CAR INTERNATIONAL, INC.,
Appellee.

ECONO–CAR INTERNATIONAL, INC.,
Appellant,

v.

Carl M. TAUTE, dba Econo-Car of
Billings, Appellee.

Nos. 22535, 22535–A.

United States Court of Appeals
Ninth Circuit.

July 7, 1969.

George C. Dalthorp (argued), of Crowley, Kilbourne, Haughey, Hanson & Gallagher, Billings, Mont., for Econo-Car Int'l.

John C. Sheehy (argued), of Hutton, Schiltz & Sheehy, Billings, Mont., for Taute.

Before HAMLEY and KOELSCH, Circuit Judges, and *SOLOMON, District Judge.

SOLOMON, District Judge:

Econo-Car International (Econo-Car) appeals from a judgment based upon a jury verdict in favor of Carl M. Taute for fraud and for breach of a franchise agreement.

## FRAUDULENT INDUCEMENT

In June, 1963, Econo-Car granted Taute a franchise to operate a rent-a-car business in Billings, Montana. Taute claims Burko, an Econo-Car agent, made the following representations and prom-ises prior to the execution of the franchise agreement:

a. As a result of a study conducted for Burko, Econo-Car knew the best three locations for a rent-a-car business in Billings.

b. Burko would send three men to Billings to help Taute during his first few weeks, and these men would call on logical customers and help develop sub-stations.

c. The entire $6,000 franchise fee would be spent in starting the operation in Billings and Econo-Car would pay for three pages of newspaper advertisements during the grand opening.

d. Taute had the option of determining whether the rental period would be 12 or 18 months.

The trial judge instructed the jury that the measure of damages for fraudulent inducement is the value of the franchise agreement with the inducements, diminished by the value of the franchise without the inducements. The jury awarded Taute $6,000, the full amount he paid Econo-Car for the franchise.

█ In August, 1963, while the contract was largely executory, Taute learned that Burko's statements were false. Nevertheless, Taute continued with his preparations to go into business on the basis of the written agreement. He selected a location and terminated his employment. In October, 1963, he accepted delivery of ten cars and thereafter remained in business for 16 months without mentioning the misrepresentations. In addition, Taute negotiated changes in the terms of the franchise. Under these circumstances, Taute waived his right to sue for fraud based on the prior oral misrepresentations. Koch v. Rhodes, 57 Mont. 447, 188 P. 933, 937 (1920); Commodity Credit Corp. v. Rosenberg Bros. & Co., 243 F.2d 504, 512–513 (9th Cir. 1957).

* Honorable Gus J. Solomon, United States District Judge, District of Oregon, sitting by designation.

Since we determine that the judgment must be reversed because Taute waived his right to sue on the cause of action charging fraudulent inducement, we do not consider Econo-Car's other allegations of error on the $6,000 judgment.

---

## BREACH OF THE FRANCHISE AGREEMENT

Taute's other cause of action charged Econo-Car with breach of the franchise agreement. The jury awarded Taute $1,052.00. Econo-Car appealed and Taute cross-appealed.

The franchise agreement provided:

" * * * all vehicles must be acquired by the ECONO-DEALER on the basis described in schedule 'B', or upon such other basis as may be presented by ECONO-CAR for the benefit of the entire ECONO-CAR RENTAL SYSTEM."

Schedule "B" provided:

"Each lease shall run for a minimum period of twelve (12) months to a maximum of eighteen (18) months."

In August, 1963, Taute signed a lease requiring Econo-Car to provide cars for 18 months and permitting Econo-Car to terminate after 12 months if it provided replacement vehicles.

Taute received ten cars from Econo-Car during the last week of October, 1963. In November, Econo-Car notified Taute that thereafter all vehicles would be available for 12 months, but that either party could extend the term two months. Taute did not agree to this change.

In October, 1964, Econo-Car notified Taute that 1965 vehicles would be leased for six months, with a one-month extension. Taute did not agree to this change.

Taute claims that he suffered damage when Econo-Car varied the lease periods, because he was unable to take advantage of Montana tax provisions dealing with new cars. There is no merit to this claim. Under Montana law, a new car is not subject to property taxes in the year it is acquired, but it is taxed on February 15 of the following year. Taute claims that he planned to acquire his cars between January 1 and February 15 of each year, dispose of them during the same period in the following year, and thus avoid the tax entirely.

Even if Econo-Car's unilateral alterations of the lease provisions amounted to a breach of the franchise, Taute has not proved damages as a result of this breach. Taute paid the automobile tax on February 15, 1964, for the cars acquired in October, 1963, but he expected to pay this tax under the terms of both the original franchise agreement and the August, 1963, modification. Taute did not pay the tax in 1965 because he surrendered his automobiles before it became due.[1]

Taute also claimed Econo-Car breached the insurance provisions of the franchise agreement. The agreement required Econo-Car to provide $100 deductible collision insurance. In December, 1963, Econo-Car unilaterally began to charge Taute $5.00 per month per car for insurance. In September, 1964, Econo-Car unilaterally raised the deductible to $250. The trial judge instructed the jury that it could award Taute $5.00 per month per car for the months Taute paid this charge. The trial judge also permitted the jury to award Taute the cost difference between a $100 and a $250 deductible policy for the time that the latter was in effect. We believe Taute was entitled only to the cost difference between the deductible policy promised and the one provided.

[1]. "Q. With respect to the new [1965] automobiles, did you license them for 1964?
A. [Taute] No—yes, I licensed them for '64.
Q. You did not license them for 1965?
A. No.

Q. You had turned these automobiles back on February 15, 1965?
A. Correct.
Q. So you didn't have to license them at that time?
A. Yes."

The insurance charge of $5.00 per month per car was made only after Econo-Car reduced the contractual rental rate of Taute's fleet by an amount greater than $5.00 per car. Thus, the $5.00 charge reinstated a portion of the prior, unilateral reduction, and we do not believe Taute was damaged by having to pay it. But Taute did suffer damage when he was forced to bear the risk for the first $250 instead of the first $100 of damage to each car. The evidence indicated that this risk was worth $8.00 per month per car. Taute bore the risk for five months on ten cars and he was entitled to relief of $400.[2]

We conclude that Taute was entitled to an award of $400 on his breach of contract claim. In anticipation that the judgment might be reversed and a new trial ordered, Taute raised additional claims of error. We consider them seriatim and affirm the trial court on each claim.

■ Taute claims Econo-Car breached the turn-in provisions of the franchise. Under these provisions, Taute was not liable for ordinary wear and tear, but he was liable for serious damage. After his first turn-in, Taute was assessed certain amounts. He complained, and the charge was dropped. Nevertheless, Taute now claims he is entitled to compensation for the uncertainty he experienced. The trial judge correctly instructed the jury that there was no evidence to support an award of damages for breach of the turn-in provisions.

■ Taute's next allegation concerns the advertising provisions of the franchise. The original contract required Econo-Car to give Taute $7.50 per month per car on condition that Taute spend $15 per month per car in advertising. In May, 1964, Econo-Car unilaterally raised its contribution for advertising to $14.50 per month per car, but subsequently reduced its payment to cover only 75 per cent of Taute's fleet. The net result of these alterations was that Econo-Car spent $15.00 per month more for advertising (on a 10-car fleet) than the franchise agreement required. The trial judge correctly instructed that there was no breach of the advertising provisions.

■ Finally, Taute contends that Econo-Car's breach of certain minor provisions of the franchise agreement entitles him to general damages in addition to any losses flowing from the breaches themselves. He seeks reimbursement for capital contributions, operating losses, and the value of labor he and his wife invested in the business. Taute may only be placed in the position he would have occupied had Econo-Car performed in accordance with its agreement. He is not entitled to reimbursement for an unsuccessful business venture. Marcus & Co. v. K.L.G. Baking Co., 122 N.J.L. 202, 3 A.2d 627 (1939).[3]

On the cause of action for fraudulent inducement, the judgment for $6,000 is reversed. On the cause of action for breach of the franchise, the judgment is reduced from $1,052.00 to $400.00. Neither party shall recover costs.

---

2. Taute claims his risk with a $250 deductible policy, multiplied by ten cars, was $2,500, or $1,500 more than his risk with a $100 deductible policy. There is no merit to his claim that he is therefore entitled to damages measured by the difference in risk, rather than the difference in insurance costs.

3. The franchise agreement provided for the application of New Jersey law.